524 So.2d 1342 (1988)
STATE of Louisiana
v.
Phillip WASCOM.
No. KA 87 1188.
Court of Appeal of Louisiana, First Circuit.
April 19, 1988.
*1343 Duncan Kemp, III, Dist. Atty., Livingston, for plaintiff.
Robert Liptak, Francis Touchet, Denham Springs, for defendant.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
Defendant was indicted for the first degree murder of Julia Szari. La.R.S. 14:30. Defendant entered a dual plea of not guilty and not guilty by reason of insanity. At a second trial, the jury found defendant guilty as charged.[1] The trial court sentenced the defendant to life imprisonment without benefit of probation, parole, or suspension of sentence upon the recommendation of the jury. Defendant has appealed, urging six assignments of error:
1. The trial court erred by denying his motion to suppress the statements he made while in the custody of the Livingston Parish Sheriff's Office.
2. The trial court erred by holding that defendant made a knowing and intelligent waiver of his legal and constitutional right to remain silent.
3. The trial court erred by denying defendant's motion for mistrial when the prosecutor mentioned evidence of other crimes in the state's opening statement without prior notification to defendant of the state's intention to introduce other crimes evidence at trial.
4. The trial court erred by admitting into evidence the testimony of Jessie Lord who was acting secretly as a state agent after defendant had retained counsel and in violation of defendant's constitutional rights.
5. The trial court erred in denying defendant's motion for mistrial when the prosecutor remarked and/or testified, during cross-examination of a defense witness, as to the ultimate issue of fact before the jury.
6. There was insufficient evidence for a jury to convict defendant of First Degree Murder.

FACTS
The instant offense occurred in Livingston Parish on September 17, 1983, at the victim's business establishment, the Rainbow Tavern. Szari operated the business and resided in a room located behind the tavern.
A bystander noticed that Szari was "standing or half standing, half sitting in her car" with the door partially open in front of another nearby tavern. The bystander asked Szari what was the matter. The victim responded: "[H]e tried to kill me and I am hurt ... bad[.] I am dying." The witness then asked the victim who had attacked her. Szari replied "[Y]ou know him, he is the one with the hat." She also stated that it was a knit hat.
The eyewitness summoned the Livingston Parish Sheriff's Office and an ambulance. Upon arrival, a sheriff's deputy managed to obtain a brief description of the assailant from Szari. The victim described the assailant as white, tall, and slim. The victim also indicated to the deputy that the assailant wore a "hat or something" on his head.
After being treated at a local emergency facility, Szari remained in a hospital until her death on October 9, 1983. At the autopsy, it was determined that Szari's death was caused by a blow to the victim's forehead.
A number of days after the assault, the deputies received information from a local bank that two checks, dated September 17, 1983, had been cashed on Szari's bank account. The bank had been previously notified that the victim's checkbook had been *1344 stolen. A number of days later, the deputies were contacted by officials of the Livingston State Bank. Both checks had been cashed by a local food store on Szari's bank account. Upon examining the signature card of Szari's account, the bank determined the signatures were unauthorized and refused to honor both checks.
The deputies interviewed the food store clerk for the identity of the person who signed the checks. The individual was described by the clerk as male, white, and other information that lead to a composite drawing of the person. This composite drawing lead to Wascom's arrest.
On September 30, Wascom was arrested and given his constitutional rights by the arresting deputy. Defendant was not questioned until the following day. After again being advised of his Miranda rights, defendant made a series of inculpatory statements and confessions in regard to the instant offense. The statements and confessions, with the exception of defendant's initial statement, were witnessed by both Foster and Stewart. Before defendant made his initial statement, Foster advised him of his constitutional rights, and defendant signed a waiver of rights and a consent to questioning form. Foster testified that, from the time of defendant's arrest until about 6:00 p.m. on October 1, he advised defendant of his rights at least four times and stated that defendant indicated that he understood his rights. Several of the statements were recorded on audiotape, and defendant's final statement, which was elicited at the Rainbow Tavern was recorded on videotape. At trial, the state introduced into evidence the video tapes and transcription of the audiotapes.
Wascom admitted he went to the Rainbow Tavern at about "after 10 o'clock." Once Wascom was inside, after the victim gave Wascom a cup of ice, Wascom attacked her by hitting her with a bar stool. He then stabbed the victim with a knife as she apparently tried to defend herself and/or to fight him with a broom. Defendant admitted having taken the victim's purse, which he said contained about seventy to eighty dollars, and having cashed two of her checks. About three or four days later, defendant borrowed his mother's car and drove to the Courtney Bridge, where he disposed of the knife he had used to stab the victim.
During the period in which defendant gave his statements on October 1, he executed a handwritten waiver whereby he agreed to participate in a physical lineup without the presence of an attorney. At the lineup, the food store clerk identified defendant as the individual for whom he had cashed Szari's checks. The clerk later identified Wascom as that same individual at trial.
Handwriting samples were obtained from the defendant and delivered to a forensic document expert. At trial, he testified that he compared Wascom's handwriting samples to the signatures on Szari's checks and concluded that, in his expert opinion, the person who wrote the handwriting samples also wrote the writing on the checks.

ASSIGNMENTS OF ERROR NOS. 1 AND 2
By means of these assignments, defendant contends that the trial court erred (1) by denying his motion to suppress the statements he made while in custody because the state failed to prove the statements were freely and voluntarily made, and (2) by holding that Wascom made a knowing and intelligent waiver of his legal and constitutional right to remain silent. Defendant argues that, because of his intoxication induced by both alcohol and drug consumption, he lacked the capacity to make a knowing and intelligent waiver of his constitutional rights and that, thus, his statements to the police were not freely and voluntarily made.
Before a confession can be admitted into evidence, the state has the burden of affirmatively showing that it was made freely and voluntarily, and not influenced by fear, duress, intimidation, menaces, threats, inducements, or promises. La.R.S. 15:451. "Furthermore, if the statement was elicited during custodial interrogation, the state must show that the defendant *1345 was advised of his constitutional rights." State v. Narcisse, 426 So.2d 118, 125 (La.1983), cert. denied, 464 U.S. 865 (1983).
"Intoxication can render a statement involuntary if the intoxication is of such a degree that it negates defendant's comprehension and renders him `unconscious of the consequences of what he is saying.'" Narcisse, 426 So.2d at 125. Whether intoxication exists and whether it is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact. State v. Robinson, 384 So.2d 332 (La.1980).
With regard to the relationship between diminished mental or intellectual capacity and involuntariness, the Supreme Court has noted that such a condition does not of itself vitiate the ability to knowingly and intelligently waive constitutional rights and make a free and voluntary confession. State v. Benoit, 440 So.2d 129, 131 (La. 1983). The critical factors are whether the defendant was able to understand the rights explained to him and whether he voluntarily gave a statement. State v. Young, 469 So.2d 1014, 1018 (La.App. 1st Cir.1985).
After carefully viewing and listening to defendant's videotaped statement and listening to his statements recorded on audiotape and in light of all the evidence adduced at the suppression hearing and the evidence introduced at trial pertinent to defendant's contentions, we find that the state carried its burden of proving that defendant was both capable of and did in fact knowingly and intelligently waive his constitutional rights before making his statements and that such statements were made freely and voluntarily. The evidence showed defendant was advised of his constitutional rights at least four times, that he was able to understand those rights (which included the right to remain silent), that he waived those rights, and that he made his statements voluntarily. Cf State v. Narcisse, supra; State v. Delore, 381 So.2d 455 (La.1980); State v. Wille, 496 So.2d 375 (La.App. 5th Cir.1986), writ denied, 497 So.2d 301 (La.1986). Hence, the trial court properly allowed the audiotapes, videotape and the transcripts of the audiotapes to be admitted into evidence.
These assignments lack merit.

ASSIGNMENT OF ERROR NO. 3
By means of this assignment, defendant contends that the trial court erred by denying his motion for mistrial when the prosecutor mentioned evidence of other crimes during the state's opening statement, without having given prior notification to him of the state's intention to introduce other crimes evidence at trial.
During the prosecutor's opening statement, he related that the "first break" in the case occurred when the sheriff's office learned that two of the victim's personal checks had been cashed at Charter Marketing, that the victim's bank had refused to honor the checks because they bore unauthorized signatures, and that Brian Penny would identify defendant as the person who signed the checks. Thereupon, defense counsel entered an objection. Outside the presence of the jury, defense counsel moved for a mistrial on the basis that the prosecutor had referred to inadmissible other crimes evidence, i.e., forgeries; and, in support of his motion, he cited State v. Prieur, 277 So.2d 126 (La.1973). The prosecutor countered that Prieur was inapplicable because the forgeries were part of the res gestae. The trial court correctly refused to grant the motion.
The prohibition against references to inadmissible evidence of other crimes under La.Code Crim.P. art. 770[2] excludes the evidence of words or actions which form a part of the res gestae. State v. Brown, 428 So.2d 438 (La.1983); La.R.S. 15:447. To constitute res gestae, those actions or words must be necessary incidents *1346 of the criminal act, or immediate concomitants of it, or form in conjunction with it one continuous transaction. La.R.S. 15:448.
Prieur recognized the res gestae exception to the inadmissibility of evidence of other crimes, and Prieur "does not require the state to provide notice to the defendant of crimes that fall within the res gestae exception." State v. Belgard, 410 So.2d 720, 723 (La.1982). Because defendant forged and cashed two of the victim's checks at a time in close proximity to the robbery and attack perpetrated against her, those events formed a continuous chain of events with the instant offense and were within the res gestae. State v. Edwards, 406 So.2d 1331 (La.1981), cert. denied, 456 U.S. 945, 102 S.Ct. 2011, 72 L.Ed.2d 467 (1982); State v. Sanford, 446 So.2d 1381 (La.App. 1st Cir. 1984). "The state is permitted to present to the jury the criminal act charged in its entirety. To hold otherwise would require that the state present only a part of the sequence of events which formed the criminal transaction." State v. Brown, 428 So.2d 438, 442 (La.1983).
For the foregoing reasons, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
By means of this assignment, defendant contends that the trial court erred by admitting into evidence the testimony of Jessie Lord (Lord) who was acting as a state agent after defendant had retained counsel and in violation of defendant's right to counsel under the U.S. Const. Amend. VI and La. Const. art. I, § 13.
At defendant's (second) trial, Lord testified that he was a former federal prison inmate, that he had been brought to Louisiana to testify in an (unrelated) murder case in Tangipahoa Parish, and that he had been held in the Livingston Parish Jail for three months before defendant's trial. In his trial testimony, he recounted various inculpatory statements and a confession made to him by defendant in regard to the instant offense while the two men were incarcerated in the Livingston Parish jail.
Initially, we note that defendant neither offered a contemporaneous objection nor moved to suppress the statements and confession on the constitutional grounds he now argues on appeal. Nonetheless, this court can properly review such an additional ground to suppress when it is fully argued later at trial on the merits or at a hearing on a motion for new trial. See State v. Serrato, 424 So.2d 214 (La.1982). However, in this case defendant failed to argue the additional ground at trial or on a motion for new trial. Hence, defendant's argument is not properly before this Court. In any event, we find defendant's contention to be without merit.
Lord testified that, during his period of incarceration at the Livingston Parish Jail, no official (local, state or federal) requested that he obtain any information from defendant. Lord testified that the Livingston Parish jail warden was the first person he told that defendant was admitting the instant offense. When questioned as to whether or not the warden suggested that he try to secure more information from defendant, Lord denied that the warden had done so, although he stated the warden told him to keep his "eyes and ears open" and to let him know "if you hear anything else about it." An FBI agent, testified that Lord had been brought to the Livingston Parish Jail and incarcerated there as a material witness in a homicide case that originated in Tangipahoa Parish, not for the purpose of obtaining information from any inmate in that jail, including Wascom. The warden testified that Lord had been incarcerated in the jail for about four to five months prior to the instant trial and that neither he nor anyone else, to his knowledge, ever requested Lord to elicit information from defendant. The warden denied that, he had ever asked Lord to go back and obtain more information from the defendant.
In Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 487, 88 L.Ed.2d 481 (1985), the United States Supreme Court stated the following:
The Sixth Amendment guarantees the accused, at least after the initiation of formal *1347 charges, the right to rely on counsel as a `medium' between him and the State. * * * [T]his guarantee includes the State's affirmative obligation not to act in a manner that circumvents the protections accorded the accused by invoking this right. The determination whether particular action by state agents violates the accused's right to the assistance of counsel must be made in light of this obligation. Thus, the Sixth Amendment is not violated wheneverby luck or happenstancethe State obtains incriminating statements from the accused after the right to counsel has attached. However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in a confrontation between the accused and a state agent. [Citation and footnote omitted]
In the instant case, the record shows that the state neither created an opportunity to confront defendant without his counsel's presence nor did it obtain statements from defendant by knowingly circumventing his right to have counsel present in a confrontation between him and a state agent. State v. Brown, 434 So.2d 399 (La.1983).
Thus, this assignment is without merit.

ASSIGNMENT OF ERROR NO. 5
By means of this assignment, defendant contends that the trial court erred by denying his motion for a mistrial when the prosecutor both alluded to a non-existent other crime and remarked and/or testified, during cross-examination of a defense witness, as to the ultimate issue of fact before the jury, i.e., whether defendant was guilty of murder.
During the prosecutor's cross-examination of Dr. Phillip Louis Cenac, Jr., Dr. Cenac testified that defendant "presents a pattern" which is easily recognizable. When asked to explain what he meant, Dr. Cenac stated as follows:
That means that an hour from leaving this courtroom, he will be drunk, predictably so. That means that his behavior is much more predictable that (sic) yours or mine. As a matter of fact, that is the interesting thing about it. It is dependent behavior. It is as if he has no choice anymore. It is as if he is hooked up to one of those feeding machines that the pharmacologist use (sic) to study the addiction potential.
Thereupon, the prosecutor asked Dr. Cenac if he was saying that defendant would kill again; and defense counsel objected to the question. Out of the presence of the jury, defense counsel moved for a mistrial. After denying defendant's motion for a mistrial and upon the jury's return to the courtroom, the trial court admonished the jury to disregard the prosecutor's question since it presumed a fact which was in the nature or the essence of the trial.
Contrary to defendant's assertion, within the context in which the prosecutor's question occurred, the question did not amount to a prohibited reference under La.Code Crim.P. 770(2) to another crime committed or alleged to have been committed as to which evidence was not admissible. Although the question impliedly expressed the prosecutor's opinion as to defendant's guilt in reference to the instant offense, the question was asked to the witness after the state had presented its case-in-chief. Taken in that context, we find that the expression of the prosecutor's opinion was apparently based on the state's evidence that had been placed before the jury and not evidence outside this case. State v. Eastin, 419 So.2d 933, 938 (La.1982).
The trial court is given discretion to determine whether a fair trial is impossible or an admonition is adequate to assure a fair trial when prejudicial conduct does not fit within the mandatory mistrial provisions of La.Code Crim.P. art. 770. The trial court correctly determined that an admonition was sufficient in this case. "The harsh remedy of mistrial is not justified when an *1348 admonition will preserve the defendant's rights." State v. Belgard, 410 So.2d 720, 724 (La.1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NO. 6
By means of this assignment, defendant contends that the evidence is insufficient to convict him of first degree murder. However, his entire argument hinged on this Court finding merit to assignments of error one and two, i.e., that his inculpatory statements and confessions to the police should have been suppressed by the trial court.
Having previously found assignments one and two meritless, defendant's argument falls. In State v. Garcia, 483 So.2d 953, 956 (La.1986), the court stated:
The constitutional standard for testing the sufficiency of evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime charged beyond a reasonable doubt.
Viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found beyond any reasonable doubt that defendant had the specific intent to kill or to inflict great bodily harm that he was engaged in the perpetration of armed robbery and, hence, that he was guilty of first degree murder. La.R.S. 14:30.
This assignment of error lacks merit.
Therefore, the conviction and sentence are affirmed.
AFFIRMED.
NOTES
[1] Defendant was first tried in April of 1986, and that trial ended in a mistrial when the jury was unable to reach a verdict. Defendant's conviction occurred at his second trial on September 16-19 and 22-23, 1986.
[2] La.Code Crim.P. art. 770 provides, in pertinent part, as follows:

Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:
* * * * * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible ...