563 So.2d 469 (1990)
STATE of Louisiana
v.
Dale Joseph LATIOLAIS.
No. KA 89 1008.
Court of Appeal of Louisiana, First Circuit.
May 30, 1990.
Rehearing Denied July 18, 1990.
*470 Bernard E. Boudreaux, Jr., Dist. Atty., Walter J. Senette, Jr., Asst. Dist. Atty., Franklin, for appellee.
Don J. Hernandez, Atty. Indigent Defender Bd., Franklin, for appellant.
Before LOTTINGER, CRAIN and LeBLANC, JJ.
CRAIN, Judge.
Dale Joseph Latiolais was charged by bill of information with armed robbery. La. R.S. 14:64. After trial by jury, he was found guilty as charged. The defendant was subsequently charged and convicted of being a habitual offender and sentenced to serve thirty-three years at hard labor without parole, probation or suspension of sentence.

FACTS
On September 8, 1988, at approximately 2:00 a.m., a robbery occurred at Jay's Quick Stop in Baldwin, Louisiana. Janet Burleigh, the clerk on duty, testified that she heard the front door open and went to greet the customers when she saw a male and female with stockings over their heads. She stated that the male had a gun in his hand and told her to put her hands on her head and to walk to the cash register. The male perpetrator then tried to open the cash register, but could not get it open, so he told the victim to open it. The victim then opened the register and the female perpetrator handed a plastic bag to the male perpetrator, who emptied the cash drawer into the bag. He told the victim to get down on the floor and said: "You move, you will get shot." Burleigh stated she picked her head up and saw the male perpetrator taking cigarettes from the cigarette rack. After he took the cigarettes, the male perpetrator and his female cohort left the store. The victim did not see how they left the premises but, after they were gone, called the sheriff's department.
Patrolman Gary Stevenson of the Baldwin Police Department testified that, at approximately 2:30 a.m., on the morning of September 8, 1988, he received a call from the dispatcher informing him that an armed robbery had just occurred at Jay's Quick Stop. Prior to receiving this call, Stevenson had witnessed what he described to be the only vehicle in the area at that time, a small light blue Dodge which was dirty and its hub caps were missing. Stevenson observed its occupants to be a white male and female. When Stevenson arrived at Jay's Quick Stop, Janet Burleigh advised him that the perpetrators were white and that the male was approximately five and one half feet tall and that the female was approximately the same height. On receiving this information, Stevenson recalled seeing the light blue Dodge with its white occupants, and radioed Deputy Mark Hebert of the St. Mary Parish Sheriff's Office to be on the lookout for that vehicle.
Deputy Mark Hebert testified that in the early morning hours of September 8, 1988, *471 his radio had been set on the Baldwin Police Department's frequency and he heard the initial report about the armed robbery at Jay's Quick Stop. At the time, he was near Centerville, Louisiana, but deduced that the perpetrators had to be in the Baldwin area so he headed in that direction. Hebert then received a call from Officer Stevenson informing him that a white male and a white female had committed the robbery. Officer Stevenson informed him that, immediately prior to the armed robbery, he had noticed a light blue Dodge automobile with two white occupants in the Baldwin area near the vicinity of the robbery. Deputy Hebert was informed that the vehicle had tinted windows, no hub caps and was extremely dirty. He recalled seeing a vehicle earlier that evening which fit the description of the suspect vehicle. Hebert went to the location where he had earlier observed the automobile, at the Boudreaux Trailer Park, near the foot of the Baldwin Bridge. Upon arrival, Hebert saw a vehicle which appeared to match the description of the vehicle observed by Officer Stevenson. Hebert exited his unit and felt the hood of the suspect vehicle, which was still warm. Hebert then called Stevenson and informed him of his discovery. When Stevenson arrived, he identified the vehicle as the one he had earlier observed in Baldwin. Hebert knocked on the door of the trailer and Carl Blanchard, the owner of the vehicle in question, answered the door. Hebert informed Blanchard that they were investigating an armed robbery that had just occurred in Baldwin. Hebert also read Blanchard his Miranda rights.
Blanchard informed Hebert that there were several persons living at the trailer with him. Hebert prepared a consent to search form, which was presented and explained to Blanchard. Blanchard signed the form and gave the officers permission to search the residence. Dale Latiolais, defendant herein, and Shawn Burke were also in the residence. When they came out of the front bedroom, the officers advised them of their Miranda rights and asked defendant if he would consent to a search of the room. Defendant signed a consent form giving the officers permission to search his room. At that time, the defendant informed the officers that he knew nothing about the armed robbery which had occurred in Baldwin earlier that evening.
The officers then proceeded to search the trailer. The search included the defendant's room, where the officers checked under the mattress and found a revolver and a wallet containing cash. Directly across from the bed, there was a chiffon robe which contained a purse. In the purse, the officers found more cash and some food stamps. The robe also contained a couple of cartons of cigarettes. Between the bed and dresser, the officers located a Gatorade jar full of coins. A piece of stocking was located in a small trash bag next to the bed. Another stocking was found in a balled up shirt. Other items of evidence were also located in defendant's room, including a small plastic bag into which the money from the robbery was allegedly placed and certain articles of clothing that matched the description given by the victim.
After the search was conducted the defendant and Shawn Burke were placed under arrest and turned over to Al Gros, the Chief of the Baldwin Police Department. Chief Gros testified that he took statements from both the defendant and Shawn Burke. Gros indicated that he informed the defendant of his Miranda rights and had him execute a waiver of rights form before he took the statement. Defendant then gave Gros a statement wherein he gave the details of his participation in the crime herein.

MOTION TO SUPPRESS
In his first assignment of error, the defendant contends that the trial court erred in denying his motion to suppress. Before trial, the defendant filed a motion to suppress the physical evidence found in his room at the trailer and the confession he gave to the police. Defendant argues that the items found at the trailer should not have been allowed into evidence at trial because his physical and mental condition were impaired by the consumption of alcohol *472 and penicillin at the time the consent to search form was executed. Defendant assigns the same reasons to support his argument for suppression of his taped confession.
A warrantless search is unreasonable unless the search can be justified by one of the narrowly drawn exceptions to the warrant requirement. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 2043-2044, 36 L.Ed.2d 854 (1973). A search conducted with the subject's consent is a specifically established exception to both the warrant and probable cause requirements. State v. Peters, 546 So.2d 829, 831 (La.App. 1st Cir.), writ denied, 552 So.2d 378 (La.1989). When the state seeks to rely upon consent to justify a warrantless search, it also must demonstrate that the consent was freely and voluntarily given without coercion. State v. Peters, 546 So.2d at 831. The voluntariness of defendant's consent to search is a question of fact to be determined by the trial court under the facts and circumstances surrounding each case. State v. Ludwig, 423 So.2d 1073, 1076 (La.1982); State v. Peters, 546 So.2d at 831. The fact that an accused has been using alcohol, though certainly a relevant factor to the determination, will not alone render the consent involuntary. State v. Ludwig, 423 So.2d at 1076. Moreover, the trial court's determination as to the credibility of witnesses is to be accorded great weight on appeal. State v. Peters, 546 So.2d at 831-832.
Before a confession can be introduced into evidence, the state has the burden of affirmatively proving that it was free and voluntary and not made under the influence of fear, duress, intimidation, menaces, threats, inducements or promises. La.R.S. 15:451. Further, if the statement was elicited during custodial interrogation, the state must show that defendant was advised of his constitutional rights. State v. Wascom, 524 So.2d 1342, 1344-1345 (La. App. 1st Cir.), writ denied, 531 So.2d 470 (La.1988). When the free and voluntary nature of the confession is challenged on the ground that the defendant was intoxicated at the time of the confession, the confession will be rendered inadmissible only when the intoxication is of such a degree as to negate defendant's comprehension and to render him unconscious of the consequences of what he is saying. State v. Brown, 522 So.2d 1110, 1116 (La. App. 1st Cir.1988), writ denied, 548 So.2d 1222 (La.1989). Whether or not intoxication exists and is of a degree sufficient to vitiate the voluntariness of the confession are questions of fact, and the trial judge's conclusion on this issue will not be disturbed unless unsupported by the evidence. State v. Brown, 522 So.2d at 1116.
At the hearing on the motion to suppress, Ray Choates, an investigator for the St. Mary Parish District Attorney's Office, testified that he witnessed defendant execute the consent to search form. He stated that no one threatened, forced or promised defendant anything to sign the form. Choates testified that defendant appeared to be wide awake when he executed the consent to search form at the trailer. Chief Gros also testified at the hearing and stated that defendant told him that he had been using alcohol until approximately midnight of September 7, 1988. Gros stated that he smelled the odor of alcohol on defendant, but that he appeared to be all right. Gros indicated that the defendant told of his memory lapses and blackouts if he consumed too much alcohol. Gros went on to state that the defendant was anxious to tell Gros what had happened.
The defendant also testified at the hearing on his own behalf. He stated that he had been drinking during the afternoon and into the night of September 7th. The defendant claimed that he did not recall how he got home the night of September 7th. He stated that he woke up at home when the police officers came to the trailer. He stated that he did not have any physical or mental problems that would cause him to black out or suffer memory lapses. However, the defendant stated he does suffer occasional memory lapses when he drinks. The defendant recalled giving Chief Gros an oral statement, however, he claimed he could not remember what he told him.
*473 In the present case, it is clear that the defendant had been drinking several hours prior to being asked to consent to the search and give a statement. However, there was testimony that he appeared to be wide awake when he executed the consent to search form, and the transcript of his taped statement indicates that he was lucid, and gave a clear rendition of the facts which match the information given by the victim. Moreover, the record reflects that the defendant was advised of his Miranda rights prior to executing the consent to search form and prior to giving the taped statement, and that both actions were voluntary on his part. Accordingly, we find that the trial court's conclusions herein are supported by the evidence. This assignment of error is without merit.

EXCESSIVE SENTENCE
In his second assignment of error, the defendant contends that the sentence of thirty-three years at hard labor without benefit of probation, parole or suspension of sentence was constitutionally excessive as prohibited by La.Const. Art. I, § 20.
The defendant was convicted of armed robbery. Subsequent to his conviction, the state filed a multiple offender bill. La.R.S. 15:529.1. The defendant was adjudicated a second felony offender based on a prior conviction for simple burglary. The defendant's minimum sentencing exposure was thirty-three years at hard labor without benefit of parole, probation or suspension of sentence and his maximum sentencing exposure was one hundred ninety-eight years at hard labor without benefit of parole, probation or suspension of sentence. La.R.S. 15:529.1 and 14:64.[1] The defendant was sentenced to the minimum possible penalty exposure. A trial court is given wide discretion in the imposition of sentences within statutory limits, and the sentence imposed by it will not be set aside as excessive in the absence of manifest abuse of discretion. State v. Payne, 540 So.2d 520, 524 (La.App. 1st Cir.), writ denied, 546 So.2d 169 (La.1989). We find no abuse of discretion. This assignment of error is without merit.
CONVICTION AND SENTENCE ARE AFFIRMED.
NOTES
[1] La.R.S. 15:529.1 was amended by Acts 1989, No. 482, § 1. This act became effective September 8, 1989. However, the offense herein took place on September 8, 1988. Therefore, the provisions of La.R.S. 15:529.1 on the length of sentences for second and subsequent felony offenders as it read prior to the above amendment were applicable.