601 So.2d 684 (1992)
STATE of Louisiana, Appellee,
v.
Dewayne HILL, Appellant.
No. 23711-KA.
Court of Appeal of Louisiana, Second Circuit.
May 13, 1992.
*686 Jones, Charles, & Gilmore by Charles D. Jones, Monroe, for appellant.
Richard P. Ieyoub, Atty. Gen., William R. Coenen, Dist. Atty., Rayville, Penny Wise-Douciere, Asst. Dist. Atty., for appellee.
Before SEXTON, NORRIS and STEWART, JJ.
STEWART, Judge.
A 12-person jury unanimously convicted defendant, Dewayne Hill, of the second degree murder (LSA-R.S. 14:30.1) of Elnora Coon. The court sentenced him to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant appeals, assigning eight assignments of error. We affirm.

FACTS
The facts are brief and brutal. Ronnie Martin, Temeisha Russell, and defendant, Dewayne Hill, met at or near a washateria in Rayville. The three decided to go to the home of Mrs. Elnora Coon, an elderly woman who resided alone and who knew Russell. Mrs. Coon opened the door and allowed Russell to enter her home. The two women engaged in conversation and watched television for approximately 15 minutes. Defendant then entered the house and sat on the couch with the two women.
Martin entered shortly thereafter and went into the back bedroom where he rummaged through Mrs. Coon's possessions in search of valuables. Martin knocked some items off the bed, which alerted the victim to what was going on. Mrs. Coon got up from the couch and asked why they were doing this to her. Defendant grabbed her under the arms and hurled her into the ceiling. The victim's head hit the ceiling with such force that chunks of sheetrock fell to the floor. Defendant then dropped her body. As she lay on the floor, defendant choked Mrs. Coon and kicked her in the chest and rib area. Defendant took a pouch of money which he found underneath her clothing. The threesome then exited the house. Mrs. Coon died from her injuries.
Defendant, Dewayne Hill, was convicted, by a unanimous jury, of second degree murder and sentenced to life imprisonment without benefit of parole, probation or suspension of sentence. On appeal, defendant challenges the trial court's rulings on motions for continuance and mistrial, and on admissibility of testimony during trial. Defendant also asserts that errors were made during discovery, voir dire, and jury instruction. Finally, defendant asserts that the evidence was not sufficient to support the jury's verdict. We disagree.

DISCUSSION

MOTION FOR CONTINUANCE
In the first assignment of error, defendant contends the trial court erred by *687 failing to grant a continuance to allow Tony Elmore, an alleged alibi witness discovered by the defense the night before trial began, to return from military duties with Operation Desert Storm. Counsel for defendant asserted that Elmore's testimony was essential because it would corroborate the testimony of defendant's girlfriend, Sophia Chisley.
At the hearing on the motion for continuance, defense counsel said that on the previous evening, Sophia Chisley supplied information about a "material witness," Tony Elmore, who was in Saudi Arabia. It is apparent that defense counsel had not spoken to Elmore and could not possibly establish the facts to which he expected Elmore to testify. See State v. Davis, 550 So.2d 774, 780 (La.App. 2d Cir.1989).
The applicable provision of the Code of Criminal Procedure reads as follows:
Art. 709. Continuance based on absence of a witness
A motion for a continuance based upon the absence of a witness must state:
(1) Facts to which the absent witness is expected to testify, showing the materiality of the testimony and the necessity for the presence of the witness at the trial;
(2) Facts and circumstances showing a probability that the witness will be available at the time to which the trial is deferred; and
(3) Facts showing due diligence used in an effort to procure attendance of the witness.
Assuming, arguendo, a sufficient basis for the allegations in the motion for continuance, the defendant has not adequately satisfied the requirements of article 709. During the hearing on the motion, defense counsel alleged that the facts to which Elmore was expected to testify were as follows: On the night Mrs. Coon was murdered, Elmore carried Sophia Chisley to defendant's residence at approximately 12:30 a.m. She rang the doorbell, but no one answered. Elmore then took Chisley to her residence at approximately 12:45 a.m. According to Chisley, after Elmore dropped her off at her residence, defendant telephoned her at approximately 1:00 a.m., and they talked for 45 minutes to an hour.
The asserted materiality of this testimony was that Elmore would be a disinterested witness who could corroborate the foregoing events as occurring at the time the homicide occurred. This expected testimony was neither exculpatory nor otherwise material to defendant's alibi defense, as there was no indication that Elmore either saw defendant or knew of his whereabouts at the time of the homicide. We find that defendant did not sufficiently show the materiality of the testimony or the necessity for Elmore's presence at trial.
Defendant also failed to show a probability that the witness would be available in the future. Defense counsel admitted that he "... couldn't possibly say when [Tony Elmore] would be back from Saudi Arabia." On these facts, we conclude that defendant failed to satisfy the requirements of Article 709. The trial judge did not err by denying the motion for continuance. This assignment of error has no merit.

VOIR DIRE
Defendant next complains of the exclusion of qualified jurors for cause where no cause existed and the seating of a juror who could have been excluded for cause.
Defendant's brief cites no instance of a qualified juror being excluded without cause. Indeed, defendant amended his designation of the record to include only the voir dire examination of Ms. Willie G. Staten. Thus, we consider this portion of the assignment abandoned. URCA-Rule 2-12.4; State v. Dewey, 408 So.2d 1255 (La. 1982).
With respect to Ms. Staten's service as a juror, defendant contends that he was prejudiced by the trial court's denial of his challenge for cause because Staten was a first cousin of Officer Willie Robinson who investigated the murder, testified at trial, and remained in the courtroom during the trial to assist the state. Defendant also contends that he was prejudiced by Ms. Staten's concealment of her relationship by *688 marriage to another state witness, Officer Lester Staten.
A juror's relationship to one associated with law enforcement duties must be closely scrutinized and may justify a challenge for cause; however, such association does not automatically disqualify a prospective juror. State v. Comeaux, 514 So.2d 84, 93 (La.1987).
Where an accused has exhausted all of his peremptory challenges before completion of the panel, he is entitled to complain on appeal of a ruling refusing to maintain a challenge for cause made by him. State v. Monroe, 366 So.2d 1345, 1347 (La.1978). Defendant must show two elements to prevail on this alleged error: (1) that the trial court erroneously denied defendant's challenge for cause, and (2) that defendant had exhausted all of the allotted peremptory challenges. Comeaux, supra; State v. Monroe, supra; State v. Lee, 559 So.2d 1310, 1316 (La.1990), cert. denied, ___ U.S. ___, 111 S.Ct. 1431, 113 L.Ed.2d 482 (1991), rehearing denied, ___ U.S.___, 111 S.Ct. 2068, 114 L.Ed.2d 472 (1991).
We first note that, beyond defendant's allegation and the identical spelling of the names, there is no indication of any relationship between Ms. Staten and Officer Staten. The transcript does not reflect that the state questioned the juror regarding the alleged relationship. The defense questioned her as follows:
Q. Do you know any of the other officers I've been asking, uh, people about all day?
A. Uh, just, not personally, just when I see them I know them.
Q. The only person you know personally is....
A. Willie.
Q. Mr. Robinson?
A. Right.
The record does not reveal whether counsel questioned the venirepersons appearing prior to this juror about Officer Lester Staten. Defense counsel never established any relationship between the juror and this police officer. Accordingly, we find no merit to defendant's argument regarding concealment of Ms. Staten's alleged relationship to Officer Staten.
That portion of the voir dire transcript contained in the record reflects neither a challenge for cause, the trial court's denial of that challenge, nor an exercise of all defendant's allotted peremptory challenges. In brief, defendant concedes that the juror should have been challenged for cause because of her blood relationship, and that, if defendant had known of Ms. Staten's relation to two law enforcement officers, the defense could have used a peremptory challenge. The minutes of the clerk reflect that, during voir dire, 22 venirepersons were excused. All peremptory challenges made by the State and defense and jurors excused by State or defense were recorded by the court and not made in open court.
On this record, we conclude that defendant has failed to show either that the trial court denied a challenge for cause, or that defendant exercised all his peremptory challenges before completion of the panel. This assignment of error has no merit.

JAIL HOUSE INFORMANT
Defendant's third assignment of error asserts that the trial court erred by denying the defense motion to exclude the testimony of a jail house informant.
After defendant's arrest, he was incarcerated at the Ouachita Parish Jail for some eighteen months before trial. While there, Glen Dale Nelson was housed with defendant for several weeks. Defendant claims that Nelson is a government agent, placed in defendant's cell for the purpose of eliciting incriminating information from him for use at his trial. Nelson in fact testified at trial. He stated that defendant admitted his involvement in the murder to him.
Government use of such undercover agents or informants is not violative of an individual's Fifth Amendment right against self-incrimination, because of the voluntary nature of the disclosure by the individual to the agent or informant. Illinois v. Perkins, *689 496 U.S. 292, 110 S.Ct. 2394, 110 L.Ed.2d 243 (1990).
However where, as in this case, a defendant has been formally charged with a crime and has invoked his Fifth and Sixth Amendment rights to counsel, the government may not use an undercover agent or informer to circumvent these rights. (For Fifth Amendment considerations, see Arizona v. Roberson, 486 U.S. 675, 108 S.Ct. 2093, 100 L.Ed.2d 704 (1988); Michigan v. Mosley, 423 U.S. 96, 96 S.Ct. 321, 46 L.Ed.2d 313 (1975); see also, Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and its progeny, United States v. Henry, 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980). For Sixth Amendment considerations see Maine v. Moulton, 474 U.S. 159, 106 S.Ct. 477, 88 L.Ed.2d 481 (1985)).
We assume that defendant did not subsequently waive either right. Compare Edwards v. Arizona, 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981); Michigan v. Mosley, supra.
[T]he Sixth Amendment is not violated wheneverby luck or happenstancethe State obtains incriminating statements from the accused after the right to counsel has attached. However, knowing exploitation by the State of an opportunity to confront the accused without counsel being present is as much a breach of the State's obligation not to circumvent the right to the assistance of counsel as is the intentional creation of such an opportunity. Accordingly, the Sixth Amendment is violated when the State obtains incriminating statements by knowingly circumventing the accused's right to have counsel present in confrontation between the accused and a state agent. [citation and footnote omitted]
Maine v. Moulton, supra, 106 S.Ct. at 487. Thus, if Glen Dayle Nelson was an undercover government agent or informer, or if the State knowingly created the situation in which Nelson could confront the uncounseled defendant, then defendant's rights have been violated.
Nelson testified that no one asked him to interrogate or otherwise obtain information from the defendant and that he asked defendant about this charge out of curiosity. He stated that he obtained nothing in exchange for either gathering or divulging information about the defendant. Nelson testified at trial that he had no pay arrangement with anyone. He admitted working through Crime Stoppers in the past, but denied any arrangement with authorities regarding the defendant. He further testified that neither the State nor Officer Robinson asked him to find out anything from the defendant.
Defendant attempted to show Nelson's status as a government agent through the testimony of Theodore R. Washington. Washington testified that Nelson's general reputation was that of a "snitch," but he could not testify from personal knowledge that Nelson was an agent of the government. Much of Washington's testimony was based on inadmissible hearsay testimony. The defense presented no other testimony to establish its position.
On this record, we conclude that defendant failed to show either that Nelson was an agent of the government or that the state created a situation likely to induce the defendant to make incriminating statements. See State v. Brown, 434 So.2d 399, 402 (La.1983); State v. Wascom, 524 So.2d 1342 (La.App. 1st Cir.1988), writ denied, 531 So.2d 470 (La.1988). This assignment has no merit.

FAILURE TO PRODUCE PURSUANT TO DISCOVERY MOTION
This assignment challenges as error the state's failure to timely disclose information about the "alleged eyewitness," Officer Lester Staten, and "jailhouse informant," Glen Dale Nelson. Defendant asserts that this failure to disclose, which deprived defendant of the right to a full and robust cross-examination of state's witnesses, is a ground for automatic reversal.
In support of his argument, defendant cites Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) and it progeny. Brady and its progeny require disclosure of all exculpatory information by the state to the defendant. By contrast, *690 the testimony of Glen Nelson and Officer Lester Staten is inculpatory. We therefore find Brady inapplicable to the facts of this case.
Subsequent to compliance with an order to permit discovery or inspection, each party has a continuing duty to promptly disclose additional evidence. LSA-C.Cr.P. art. 729.3. If it is brought to the attention of the court that a party has failed to comply with an order for discovery or inspection, the court may, inter alia, grant a continuance or prohibit the party from introducing into evidence the subject matter not disclosed. LSA-C.Cr.P. art. 729.5.
Defendant filed motions for discovery and inspection which the state answered. The record reflects that, on January 23, 1991, the state filed its second supplemental answer to defendant's motion for discovery, thus producing the information sought by the defense. That answer details the testimony of Glen Dale Nelson.
During pre-trial argument on his Motion to Preclude the Testimony by Jailhouse Informant, counsel for defendant acknowledged receipt of the state's supplemental answer which detailed information about Nelson, and conceded that he was sure the state had supplied him with the information as timely as it was received by the state.
Defense counsel was satisfied that the state was in good faith in complying with its continuing duty to disclose. Disclosure was made at least five days before trial. Moreover, defendant did not seek a continuance as a result of not receiving earlier notice of Nelson's statement. Under these circumstances, we find that the state substantially complied with the Louisiana Code of Criminal Procedure articles 716 and 729.3. See State v. Johnson, 380 So.2d 32, 33-34 (La.1980). Defendant's contention that the state failed to timely disclose Nelson's statement has no merit.
With respect to Officer Lester G. Staten, there is no requirement that the state provide defendant the name of an alleged eyewitness. See LSA-C.Cr.P. arts. 716, et seq. Staten's testimony did not involve statements by the defendant, or other information discoverable by the defendant under Louisiana Code of Criminal Procedure. Generally, the law is well-settled that the state is not required to furnish defendant with a list of witnesses. Under a strict reading of LSA-C.Cr.P. art. 727, even where a defendant voluntarily furnishes a notice of alibi defense, the state is not required to reciprocate. State v. Chapman, 410 So.2d 689, 698-699 (La.1981). Nonetheless, the record reflects that the state produced Officer Staten's name on January 28, 1991 when it filed its list of rebuttal witnesses in response to defendant's notice of alibi defense filed on January 23, 1991. Under these circumstances, we find no merit in this assignment.

JURY INSTRUCTION
Defendant claims that the trial court should have instructed the jury that the testimony of a jail house informant should be viewed with care and caution.
A party may not assign as error the giving or failure to give a jury charge, or portion thereof, unless that party objects before the jury retires or within such time as the court may reasonably cure the alleged error. LSA-C.Cr.P. art. 801. Before argument, a party has the right to submit to the court special written charges for the jury. After argument has begun, the court has discretion to receive such charges. LSA-C.Cr.P. art. 807.
On January 28, 1991 during pretrial argument on defendant's Motion to Preclude Testimony by Jailhouse Informant, defense counsel requested a special written charge, but later in the argument agreed to submit a memorandum of law on the issue at a later date. Thereafter, the record reflects no further discussion, memoranda, or objection regarding jury instructions. There is no indication that defense counsel submitted a special written charge pursuant to LSA-C.Cr.P. art. 807. Immediately after charging the jury, the trial judge called for any objections as the jury retired to deliberate. No party objected.
The authority cited in defendant's brief is (1) not binding on this court because these *691 cases are foreign authority, and (2) inapposite to the present case because neither case holds specifically that a jury charge that testimony of a jail house informant should be viewed with care and caution is required. In Barnes v. State, 460 So.2d 126 (Miss.1984), the Mississippi Supreme Court reversed Barnes' conviction because the trial judge deprived defendant of the opportunity to fully test the credibility of his accuser, a thrice-convicted drug dealer. The trial court failed to allow Barnes the latitude to fully develop the extent of the leniency/immunity deal between the state and his accuser and failed to require production of previous exculpatory and bias-reflecting statements made by that accuser. Although the other cited case, McNeal v. State, 551 So.2d 151 (Miss.1989), discusses testimony by a proven jail house informant, the court decided the case on other grounds. In both cases, it should be noted, defense counsel interposed objections.
This assignment has no merit.

OTHER CRIMES EVIDENCE
Defendant's Assignment of Error No. 5 asserts that the trial court erred by denying defendant's motion for mistrial on the basis of allowing evidence of other crimes, not arrested for or charged, to be admitted into evidence.
Officer Charles McDonald testified that defendant threatened him and Officer Robinson immediately after defendant refused to waive the Miranda rights. The jury heard testimony that, after the officers advised defendant of his rights, defendant became agitated and told the two officers "Ya'll are going to get f___ed up behind this." McDonald testified before the jury that he took this as a threat. Defendant objected to admission of this statement, asserting that the statement was evidence of other crimes because it was an assault threatening the battery of a police officer. The trial court ruled the statement was not a crime, found the statement admissible, and denied defendant's motion for a mistrial.
La.C.Cr.P. art. 770 mandates a mistrial, upon motion of a defendant, "when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to: ... another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible." (emphasis supplied)
State v. Hayes, 414 So.2d 717, 721 (La. 1982). In other situations where prejudicial remarks are made before the jury, the trial court may use his discretion to admonish the jury to disregard the remark rather than grant a mistrial. State v. Burdgess, 434 So.2d 1062, 1065 (La.1983); see also, LSA-C.Cr.P. art. 771. The general rule is that
[A] policeman is not a "court official" and therefore even if the policeman makes a reference to another crime, mistrial under La.C.Cr.P. art. 770 is not required. State v. Carter, 412 So.2d 540 (La.1982). Instead, the proper remedy would be upon request of defendant an admonition to the jury to disregard the remark. La.C.Cr.P. art. 771....
Furthermore, to trigger the need for an admonition the remark must refer to a crime alleged to have been committed by the defendant.
Hayes, supra, at 721-722. Although the comment of a police officer will be viewed with considerable concern as to its effect on the fairness of the trial, the decision is initially within the sound discretion of the trial judge. State v. Nuccio, 454 So.2d 93, 102 (La.1984). "Absent a clear showing of abuse of the trial court's discretion, this court will not upset a trial court's ruling on the matter." Id.
Officer McDonald testified about the interview during which defendant made the statement in question. McDonald remained on the witness stand and was questioned by counsel during argument, made outside the presence of the jury, regarding admissibility of the statement. McDonald testified that after defendant made this statement, defendant remained seated in his chair. He wanted to see his attorney so McDonald left to notify defense counsel of defendant's request. On these facts, we conclude that the statement which defendant *692 made to the officers was neither a crime nor an unambiguous reference to some other crime committed by the defendant. See Hayes, supra, at 722 ("Neither of the challenged comments is an unambiguous reference to crimes alleged to have been so committed."). Defendant did not argue, before either this court or the trial court, that the statement was irrelevant. Therefore, as this court has stated with regard to a similar statement, "[t]he statement made by the defendant was spontaneous, voluntary and was not elicited by police interrogation and is therefore admissible." State v. Wiley, 513 So.2d 849, 855 (La.App. 2d Cir.1987), writ denied, 522 So.2d 1092 (La.1988). There has been no showing of abuse by the trial court of his broad discretion. The trial judge properly denied the motion for mistrial.

EXPERT WITNESS
Assignment of Error No. 6 asserts that the trial court erred in denying defendant's expert witness to testify for the defense concerning his analysis of interrogations or interviews, and testimony of the state's witnesses.
During the defense's case, counsel offered the testimony of Dr. Roger Shuy, Professor of Linguistics at Georgetown University in Washington, D.C. Dr. Shuy was offered as an expert in the field of linguistics. Counsel presented his credentials and Dr. Shuy was cross-examined by the state. Dr. Shuy testified that he had analyzed various statements by Temeisha Russell and Ronnie Martin and that he planned to "organize" their statements. The trial court accepted his credentials as an expert, but ruled his testimony inadmissible.
A witness qualified as an expert by knowledge, skill, experience, training, or education may testify, in the form of an opinion or otherwise, regarding scientific, technical, or other specialized knowledge if it will assist the trier of fact to understand the evidence or to determine a fact in issue. LSA-C.E. art. 702. Broad discretion should be accorded the trial judge in his determination as to whether expert testimony should be admissible. Comment (d), LSA-C.E. art. 702.
Although testimony in the form of an opinion or inference otherwise admissible is not to be excluded solely because it embraces an ultimate issue to be decided by the trier of fact, LSA-C.E. art. 704, the proffer of testimony as to an ultimate issue in the case should be taken into account in determining whether it is, on balance, helpful or unduly prejudicial under Article 403. Comment (f), LSA-C.E. art. 702. Of course, in order to be admissible, expert testimony must be relevant. LSA-C.E. art. 402.
Defendant argues that the state stipulated to Dr. Shuy's qualifications, therefore he should have been permitted to testify. Although the trial court accepted Dr. Shuy's credentials as an expert in the field of linguistics, it does not automatically follow that Dr. Shuy must be allowed to testify, as the defense argues. The qualifications or credentials of an expert witness are but one factor to be considered in the determination of whether expert testimony is admissible. See, generally, Christophersen v. Allied-Signal Corp., 939 F.2d 1106 (5th Cir.1991); Adams v. Chevron U.S.A., Inc., 589 So.2d 1219 (La.App. 4th Cir.1991), writ denied, 592 So.2d 414 and 592 So.2d 415 (La.1992); Comment (d), LSA-C.E. art. 702.
In describing the expected expert testimony, the record reflects the following:
[by Defense Counsel]
Q. Uh, the study of language units, this discourse analysis, uh, when the units are larger than a sentence, is that what you intend to, uh, approach in this case?
[by Dr. Shuy]
A. That's the focus here, yes.
Q. And is that, explain to me then, uh, the expertise in discourse analysis as to this case, what it involves.
Q. [sic] Okay, being this case, uh, the information, the data as I refer to it, that I examined were tape recordings and transcripts of tape recordings, of *693 interviews or interrogations, whichever you prefer to call them, uh, of two different people by several different people. Uh, so this is a form of discourse called an interview. We analyze interviews, we analyze conversations, we analyze all sorts of things.
....
Q. So you're going to organize, as I understand, the testimony of various different tapes of Ronnie Martin and Temeisha Russell?
A. That's correct.
Q. And anybody else?
A. I believe that's all.
....
Q. And uh, is it your position as to whether or not you will take a, will draw a conclusion or will you merely present what the, uh, tapes and transcripts, uh, uh, do an analysis of those but not to draw a conclusion for the defendant or for the State?
A. I certainly would not draw a conclusion for the defendant or State.
The trial court stated that, of four statements by Russell and one by Martin, only the statement by Martin had been admitted in evidence. We conclude, from Dr. Shuy's description of his intended testimony, that it would have been impossible for him to analyze or organize Russell's statements without making reference to statements which had not been presented to the jury. See LSA-C.E. art. 705 B. Because Dr. Shuy examined only one statement by Martin, there would have been no comparison of different statements made by Martin. Notwithstanding Dr. Shuy's expertise as a linguist, the defendant failed to establish that the intended testimony would aid the jury in understanding the evidence or in determining a fact at issue. On this record, the trial court properly excluded the expert testimony.

SUFFICIENCY OF THE EVIDENCE
Defendant's final assignment of error is that the trial court erred by not setting aside the verdict due to insufficiency of evidence. Counsel for defendant makes no argument in the brief beyond the mere assertion that the verdict, when viewed under the standard of Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is contrary to the law and evidence.
Under Jackson the proper standard of appellate review for sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Where there is conflicting testimony regarding factual matters, the resolution of which depends on the credibility of the witnesses, the matter is one of the weight of the evidence, not its sufficiency. State v. King, 563 So.2d 449 (La.App. 1st Cir. 1990), writ denied, 567 So.2d 610 (La.1990). The trier of fact may accept or reject, in whole or in part, the testimony of any witness. State v. Miller, 561 So.2d 892 (La.App. 2d Cir.1990), writ denied, 566 So.2d 983 (La.1990).
Second degree murder is the killing of a human being when the offender has a specific intent to kill or to inflict great bodily harm. LSA-R.S. 14:30.1. The existence of intent may be inferred from the circumstances of a transaction. LSA-R.S. 15:445.
The jury saw and heard evidence of the following: The victim, Elnora Coon, was over seventy years old and frail. Ronnie Martin, a severed co-defendant, was in the back of the victim's house when he heard a loud noise, came to the door of the victim's living room and saw defendant kneeling over the prone body of the victim. He saw defendant choke the victim, who appeared unconscious. Temeisha Russell, another co-defendant, saw the defendant grab the victim under the armpits, toss her into the ceiling which cracked on impact, allow her body to fall to the floor and then place a towel over her face. After Mrs. Coon's body fell to the floor, defendant was observed kicking her and removing a pouch of money from underneath her clothing. Mrs. Coon's body did not move as the three co-defendants left her house. Wanda Thomas saw the defendant and Martin shortly after the homicide had occurred. The men appeared excited or "foolish and *694 crazy." Defendant asked if Thomas could get them some rock cocaine and told her that he had had to "rough a ni__er up."
The jury further heard that defendant told Glen Nelson that he had been involved in Mrs. Coon's murder. Defendant said that he had participated in the murder so that he could obtain money to buy drugs and tires for his car.
The jury saw and heard evidence that the coroner, Dr. McCormick, examined the victim's body. He found a bruise on her face and a hemorrhage beneath the scalp under the bruise. He also observed multiple broken ribs, hemorrhages and tears in her lungs which were made by the broken ribs, and a bruised area over her entire neck. Mrs. Coon died from the combined effects of these wounds.
The record reflects that Martin and Russell testified differently in such areas as who met whom at the washateria prior to the homicide, whether Martin went straight to the bedroom when he entered the house, whether Martin joined the defendant in kicking the victim, and whether defendant was observed choking the victim. These matters go to the weight, rather than the sufficiency of the evidence. See King, supra. The two witnesses who were in the house at the time of the homicide agreed that the defendant shoved the victim's head into the ceiling, performed violent acts upon her body as it lay on the floor, and removed some money from her person. Defendant corroborated this through his statements to Nelson. Viewing the evidence under the Jackson standard, we find that any rational trier of fact could easily conclude that the state adduced proof, beyond a reasonable doubt, that defendant committed the offense of second degree murder.

CONCLUSION
Having found no merit to defendant's assignments of error, his conviction is affirmed.
AFFIRMED.