423 So.2d 1073 (1982)
STATE of Louisiana
v.
Alfred LUDWIG.
No. 81-KA-1318.
Supreme Court of Louisiana.
November 29, 1982.
Rehearing Denied January 7, 1983.
*1074 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., John M. Mamoulides, Dist. Atty., Louise S. Korns, Kenneth L. Sanders, William Credo, Asst. Dist. Attys., for plaintiff-appellee.
David R. Katner, George E. Escher, Katner & Escher, New Orleans, for defendant-appellant.
DENNIS, Justice.
On December 7, 1979, the body of Stephen Harr was found on a street in Jefferson Parish. He had been shot four times in the head and neck. The investigating police officers found a key to Room 31 of the nearby Holiday Motel in the victim's pocket. One of the officers, Detective Hidding, proceeded to the manager's office at the motel. The manager informed Hidding of an altercation earlier in the evening at a local lounge between the victim and a man named Ludwig, who lived in Room 11. Hidding went to Room 31, but got no response. In front of Room 11 he saw blood on the porch and in the parking lot. A spent .25 caliber casing lay on the ground nearby. Hidding knocked on the door of Room 11, but received no response, although he could hear the sound of a television inside the room.
The officer had the manager open the door with a pass key. When Hidding and other police officers entered, they observed beer cans, .25 caliber shells and spent casings scattered about the room. There was a spot of blood on one piece of furniture. A cedar chest had been shot several times. After finding that no one was there, the officers left without touching anything, and secured the door.
The manager informed Detective Hidding that the occupant of Room 11 was Alfred *1075 Ludwig. A short time later, Hidding observed a man get out of a pickup camper parked in the motel parking lot. The officer approached the man who identified himself as Alfred Ludwig and who confirmed that he was the occupant of Room 11. Detective Hidding then advised Ludwig of his constitutional rights. Although he appeared to have been drinking, Ludwig responded coherently to Hidding's questions. He said he did not know where his car was and that he was not acquainted with Stephen Harr, the victim.
Hidding asked for Ludwig's consent to reenter and search his motel room. Ludwig assented and signed a consent form. Ludwig accompanied Hidding and another officer to the room. He was at a loss to explain the blood, shell casings, and bullet riddled cedar chest. Ludwig was placed under arrest.
Just before being transported to the Jefferson Parish Correctional Center, Ludwig informed the officers that his automobile was parked in front of the motel. He handed them the car keys, gave them consent to search the vehicle, and signed another consent to search form. The officers noticed blood on the rear bumper of the automobile. Inside the trunk they discovered a substantial amount of blood.
Under interrogation at the Correctional Center, Ludwig made several incriminating remarks. He stated that he had gotten rid of the weapon where no one would find it. He also stated that the victim's wife had killed Harr in Ludwig's room with Ludwig's gun and then told Ludwig to dispose of the victim's body.
Ludwig's first trial for first degree murder ended in a mistrial. However, he was subsequently indicted for second degree murder and in September, 1980 was found guilty as charged. He was sentenced to life imprisonment without benefit of probation, parole, or suspension of sentence. In this appeal he urges two assignments of error. Because each assignment is without merit, we affirm the conviction and sentence.

ASSIGNMENT OF ERROR NUMBER ONE
By this assignment of error, the defendant contends that the trial court erred when it failed to suppress evidence obtained from the defendant's motel room and automobile and an oral inculpatory statement given by the defendant. Specifically, the defendant makes three arguments. First, he contends that the initial, warrantless search of his motel room was violative of the United States and Louisiana Constitutions. Second, he contends that his consent to the search of his automobile and to the second search of his room was invalid because the permission was given while he was intoxicated. Finally, the defendant argues that his oral inculpatory statements must be suppressed because they are tainted products of these illegalities.

A. The Initial Search of the Motel Room.
Both the Fourth Amendment to the United States Constitution and Article I, § 5 of the Louisiana Constitution protect persons from unreasonable searches and seizures. Except in certain narrowly defined classes of cases, a search of private property without proper consent is "unreasonable" unless it has been authorized by a valid search warrant. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967).
One carefully defined exception to the warrant requirement, recognized throughout the United States, is the so-called "emergency exception." See, Mincey v. Arizona, 437 U.S. 385, 392, 98 S.Ct. 2408, 2413, 57 L.Ed.2d 290, 300 (1978); LaFave, Search and SeizureA Treatise on The Fourth Amendment, § 6.6 (1978). Under this exception, police officers may enter a dwelling without a warrant to render emergency assistance to a person they reasonably believe to be in distress and in need of such assistance. Root v. Gauper, 438 F.2d 361 (8th Cir.1971); See also, Mascolo, The Emergency Doctrine Exception to the Warrant Requirement Under the Fourth Amendment, 22 Buff.L.Rev. 419 (1973). *1076 The burden of showing that the entry fell within the narrow confines of the emergency exception is upon the state. See, LaFave, supra, and the cases cited therein.
This court has recognized that the emergency exception has validity in Louisiana. In State v. White, 399 So.2d 172 (La.1981), we approved a warrantless search made because of exigent circumstances. In White, police officers received a report of a shooting in a specified neighborhood late at night. Although the officers did not know the address of the incident, they observed a house with lights on, the stereo playing, and the front door open. When the officers drew near the house, they saw blood on the wall and the floor through a screen door. After learning that the house belonged to the man suspected of the shooting, the officers entered the house and made a limited search of the premises to determine whether participants in the shooting incident were still present. In White, we approved the warrantless entry and limited search as reasonable under the applicable constitutional provisions.
In the instant case, the police officers found in the victim's pocket a key to Room 31 of the nearby Holiday Motel. At the motel, the officers learned that the occupants of Rooms 31 and 11 had been in a recent altercation. When the officers investigated Room 11, they observed blood and a shell casing outside. They knocked on the door and, although the TV set was on, no one answered. The officers directed the motel manager to open the door with a pass key and made a limited search of the room to determine whether anyone was present.
Under these circumstances, the officers were justified in their warrantless entry and search. Objectively viewed, the facts in the instant case create the inference that an injured, bleeding individual was present in the defendant's motel room. The apparent need for emergency action was reasonable, given the information available to the police officers. Therefore, the search was valid as an emergency exception to the warrant requirement.

B. The Validity of the Consent.
Defendant asserts that his consent to search his room and his automobile was produced by intoxication. Therefore, he argues that the consent was invalid and that the searches yielded inadmissible evidence.
A consent search is a recognized exception to both the warrant and probable cause requirements. State v. Johnson, 380 So.2d 32 (La.1980). When asserting that a search was made with consent, the state has the burden of proving that the consent was freely and voluntarily given, as shown by the facts and circumstances of the individual case. State v. Robinson, 386 So.2d 1374 (La.1980).
The United States Supreme Court has held that the test for the voluntariness of a consent to search is a "totality of circumstances" test. Schneckloth v. Bustamonte, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). Thus, courts must examine all the surrounding circumstances to determine whether the consent was indeed voluntary. Id. The fact that an accused has been using alcohol, though certainly a relevant factor to the determination, will not alone render the consent involuntary. State v. Strange, 334 So.2d 182, 184 (La. 1976).
In the present case, it is clear that the defendant had been drinking prior to his giving the officers consent to search his automobile and motel room. However, testimony at the suppression hearing indicated that the defendant was able to move about and to respond to questions. The defendant was able to identify himself and the room in which he resided. He was read the Miranda warnings, and testimony at the suppression hearing indicates that he understood them.
The suppression hearing raised questions of credibility. The defendant claimed to *1077 remember only some of the events. He denied signing the consent forms, although the officers testified that they witnessed his signature. Given the conflict in testimony at the suppression hearing, we are not persuaded that the trial court's decision that the consent was voluntarily given was manifest error.

C. The Oral Inculpatory Statements.
The defendant contends that his oral inculpatory statements were products of the searches of his room and his car.
Since we previously decided that the searches of the vehicle and the room pass constitutional muster, the oral inculpatory statements were not tainted by an illegal search.
Accordingly, this assignment of error lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
By this assignment of error the defendant contends that the trial court erred in denying him an opportunity to present evidence that the victim's wife had shot the victim in his foot or leg some six months prior to the night of the murder with which the defendant was charged. In his proffer, the defense lawyer did not specify if the evidence would indicate whether the shooting had been intentional or accidental or any other circumstances of the incident.
The defendant attempted to present evidence of the prior shooting several times during the trial. He first sought to elicit the evidence during the cross-examination of Detective Hidding concerning his investigation of Mrs. Harr's possible implication in the charged offense. The trial court sustained the state's objection on the ground that the evidence was not relevant. The defendant next called the victim's wife as a witness, and, outside the jury's presence, requested permission to question her on redirect examination about the prior shooting. After objection by the state, the trial judge ruled that the evidence was irrelevant and constituted impermissible impeachment by the defendant of his own witness. Finally, the defendant attempted to introduce the written police report of the earlier shooting and testimony of the police officer who investigated the prior incident. However, the trial court ruled that this evidence was irrelevant and hearsay.
All evidence which is relevant to a material issue, necessary to be known to explain a relevant fact, or which supports an inference raised by such a fact, is admissible, La.R.S. 15:435, 441, except as otherwise provided by the constitution of the United States or this state, by law or by rule of this court. See, e.g. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) (exclusion based on Fourth Amendment); State v. Kinnemann, 337 So.2d 441 (La.1976) (applying La. Const. art. I, § 5,); State v. Dawson, 392 So.2d 445 (La.1980) (Louisiana's "rape shield" statute); State v. Prieur, 277 So.2d 126 (La.1973) (rule of court). Cf. Fed.R.Evid. 402. Relevant evidence is defined by our law as "that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent." La. R.S. 15:441. Relevancy of evidence is determined by the purpose for which it is offered. La.R.S. 15:442.
The standard of relevancy adopted by our statutory evidence rules is based on logic and experience as opposed to a theory of a legal minimum of probative value adopted by some courts and championed by Wigmore. The latter standard generally requires that evidence submitted to a jury have "something more than a minimum of probative value. Each single piece of evidence must have a plus value." 1 Wigmore, Evidence § 28 (3rd Ed. 1940). This legal minimum of probative value standard, or any standard requiring more than an apparent altering of probabilities, has been rejected as "unworkable and unrealistic" by *1078 the FRE,[1] most commentators,[2] revisers[3] and some courts.[4] See generally, Weinstein's Evidence, § 401[06](1982). As the Advisory Committee notes, "a brick is not a wall," and "... [I]t is not to be supposed that every witness can make a home run." See Advisory Committee Note, Rule 401. So long as the proffered evidence has a tendency to make a consequential fact more or less probable the "logical" relevancy test is satisfied. Our statutes require that evidence must be relevant to a "material issue," La.R.S. 15:435, but that evidence which "explain[s] a relevant fact" or "support[s] an inference" therefrom is admissible, and that relevant evidence is that which has a tendency to further the inquiry as to the commission of the offense and the intent. La.R.S. 15:441. Accordingly, we conclude that a fair reading of our statutory evidence rules as a whole indicates that the term "material issue" must be read in ordinary usage to mean of solid or weighty character, of consequence, or importance, rather than in an artificial or legalistic sense.
Consequently, the sum and substance of our statutory relevancy rules, is essentially identical in concept to FRE 401, which provides: "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."
Applying these precepts to the present case, we conclude that the trial court was in error in finding that the evidence was not relevant. The evidence does have a slight tendency to make the fact that Mrs. Harr fatally shot her husband more probable than it would be without the evidence. Nevertheless, we think that he properly excluded the evidence because its slight probative value was substantially outweighed by the risk that its admission would consume too much time, unnecessarily confuse the jury concerning the issues to be determined, and tend to excite the emotions of the jury to the undue prejudice of the opponent. See State v. Moore, 278 So.2d 781 (1973).
In this case in which the contested proposition is whether the defendant is the person who killed Stephen Harr, and the evidence proffered is that six months before the homicide, Harr's wife had shot him in the leg or foot, the inferences which the defendant sought to invite from the jury were that (1) because Harr's wife shot him on the previous occasion and was a beneficiary of his life insurance policy, (2) she intended to kill him at that time, (3) she continued in her desire to get rid of him for the next six months, (4) she formulated a plan to kill her husband and blame it on another person, (5) she in fact executed her plan by killing him in defendant's motel room with defendant's gun after a quarrel between the two men, and (6) she persuaded the defendant to use his own car to dispose of the body and the murder weapon. The unarticulated premises conjoined with and supposed to justify the inferential steps are: (1) a woman who shoots her husband in the leg or foot, whether the injury appears to have been intentional or accidental, is more likely to have intended to kill him for his life insurance than a person of whom nothing is known; (2) it is also more likely that she would persist in her intention to kill her husband for six months after the shooting; (3) it is similarly more likely that she would conceive a plan to kill her husband that would place the guilt on the defendant, (4) and the fact that she had either accidentally or intentionally shot her husband six months before makes it more likely that she would execute her plan by *1079 shooting her husband to death in the defendant's room after the two men had quarreled and persuade the defendant to use his car to dispose of the body and the weapon. Obviously, the value of the first item of evidence as probative of the fact that Harr's wife, and not the defendant, killed Harr, varies inversely with the number and dubiousness of the intervening inferences. The reasoning is progressively attenuated and is fractionalized at several successive points. See, Weinstein's Evidence § 401[09]. Trautman, Logical or Legal RelevancyA Conflict in Theory 5 Vand.L. Rev. 385, 388-98 (1952).
It is generally accepted that the trial judge should exclude circumstantial evidence, even though logically relevant, if its probative value is outweighed by the risk that its admission will consume too much time, unnecessarily confuse the jury concerning the issues to be determined, tend to excite the emotions of the jury to the undue prejudice of the opponent, or unfairly surprise the opponent. See, e.g., State v. Prieur, 277 So.2d 126 (La.1973); State v. Morris, 362 So.2d 1379 (La.1978); United States v. Hearst, 563 F.2d 1331, 1348-49 (9th Cir.1977) cert. denied, 435 U.S. 1000, 98 S.Ct. 1656, 56 L.Ed.2d 90 (1978). See also Fed.R.Evid. 403; Weinstein's Evidence, § 403[06]. The probative value of evidence of a possibly accidental shooting six months before the charged offense was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay or waste of time. Accordingly, the evidence was properly excluded by the trial court despite the fact that it was relevant and of some slight probative value.
Defendant argues that the trial court's exclusion of the evidence violated his federal and state constitutional rights to present a defense and to confront and cross-examine his accusers. These constitutional guarantees do not, however, require a trial court to permit the introduction of evidence that is irrelevant or which has so little probative value that it is substantially outweighed by other legitimate considerations in the administration of justice. For example, in Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973), upon which defendant relies primarily, the evidence which the high court held had been unconstitutionally excluded was highly relevant and "critical to Chambers' defense." 410 U.S. at 302, 93 S.Ct. at 1049. The proffered evidence included: (a) The cross-examination of trial witness McDonald concerning his confession to the very crime for which defendant Chambers was on trial and (b) the examination of three other witnesses who would testify to McDonald's confessions to the crime on separate occasions and to corroborating circumstances. The evidence was, of course, extremely relevant, because it related to the crime for which the defendant was on trial and tended to completely exculpate him. The fact that the evidence was highly probative of a very consequential fact was an essential ingredient in the high court's determination that Mississippi deprived Chambers of a fair trial by excluding critical evidence under its voucher and hearsay rules. In the present case, the evidence which the defendant sought to introduce was at most of only slight probative value because it concerned a shooting which occurred six months before the charged offense involving a leg or foot wound which may have been unintentional under the terms of the proffer.
Other states allow the introduction of evidence incriminating a third person only when such third person has been closely linked to the commission of the crime. See Wharton, Criminal Evidence § 195 (1972). One early Louisiana case stated a broad rule which allows evidence incriminating a third person when such evidence would establish a reasonable hypothesis of that person's guilt or a reasonable doubt of the guilt of the defendant. State v. Jenkins, 134 La. 185, 63 So. 869 (1913). This early expressed, less vigorous, rule of Louisiana arguably has validity in Louisiana today through the constitutionally guaranteed "right to represent a defense" of Art. I, § 16 of the Louisiana Constitution of 1974. However, even this test is not met in the *1080 present case because the mere evidence of the earlier incident between the victim and his wife does not establish a reasonable hypothesis of her guilt nor does it create a reasonable doubt as to the defendant's guilt.
Accordingly, this assignment of error lacks merit.
For the reasons assigned, the defendant's conviction and sentence are affirmed.
AFFIRMED.
LEMMON, J., dissents, believing that the refusal to allow questioning of the wife about her earlier shooting of her husband constituted reversible error.
LEMMON, Justice, dissenting from denial of rehearing.
Because the prior shooting, although not directly linked to this crime, involved the same victim, and because the evidence points to either defendant or the victim's wife as the perpetrator of this crime, the evidence that the victim's wife had shot her husband six months earlier bears substantially on the probability of the truthfulness of defendant's testimony that she committed this crime.[1] Exclusion of the evidence was reversible error.[2]
NOTES
[1] FRE, See Advisory Committee Note, Rule 401.
[2] See, e.g., McCormick, Evidence § 184 (2d ed. 1972); Slough, Relevancy Unraveled, 5 Kan.L. Rev. 1, 10 (1956); Trautman, Logical or Legal RelevancyA Conflict in Theory, 5 Vand.L. Rev. 385 (1951).
[3] See, e.g., Model Code of Evidence, Comment on Rule 1; Uniform Rules of Evidence, Commissioner's Note to Rule 1(d).
[4] See, e.g., North American Philips Co. v. Church, 375 F.2d 93, 96 (2d Cir.1967).
[1] This fact assumes more significance when one considers that the victim's wife was 18 years older than the victim, was married only one year, and collected life insurance after his death.
[2] Before excluding the evidence, the trial court should have at least required the defendant, out of the presence of the jury, to show the circumstances surrounding the prior shooting.