453 So.2d 1256 (1984)
STATE of Louisiana, Appellee,
v.
Freddie ARMSTRONG, Appellant.
No. CR83-840.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1984.
Writ Denied September 28, 1984.
*1257 Helen Ginger Roberts, Gravel & Brady, Alexandria, for defendant-appellant.
R. Greg Fowler, Asst. Dist. Atty., Alexandria, for plaintiff-appellee.
Before DOMENGEAUX, FORET and STOKER, JJ.
FORET, Judge.
Defendant, Freddie Armstrong, was charged by indictment of the Rapides Parish Grand Jury with second degree murder, a violation of LSA-R.S. 14:30.1. A jury of twelve persons returned a verdict of guilty of manslaughter (LSA-R.S. 14:31). The trial judge sentenced defendant to serve ten years at hard labor in the custody of the Louisiana Department of Corrections. Defendant has appealed and raised several assignments of error:
(1) Whether the trial court erred in refusing to permit defendant to introduce evidence of the violent disposition of state witness, Mark Tison, when defendant based his defense on the claim that Tison, and not defendant, had killed the victim.
(2) Whether the trial court erred in refusing to permit defendant to impeach *1258 Mark Tison's testimony regarding the reasons for Tison's commitment to a mental institution after the alleged offense.
(3) Whether the trial court erred in allowing four-year-old Freddie Armstrong, Jr. to testify concerning events he observed at the age of three and one-half years.
(4) Whether the court erred in admitting into evidence a hearsay statement purportedly made by Freddie Armstrong, Jr. to a neighbor stating that defendant had struck the victim and that the victim was bleeding.

FACTS
On May 4, 1982, Avery Armstrong was stabbed to death in her home in Rapides Parish. Defendant, who was the victim's former husband, and Mark Tison, who was the victim's current boyfriend, were in the house immediately prior to the stabbing.
Mark Tison testified that on the morning of the stabbing he was asleep in the living room of the victim's house when the defendant came to the door. According to Tison, he heard the defendant arguing with the victim, heard a blow, and saw the victim fall backwards from the door of the house. Tison testified that defendant entered the house with a knife in his hand and that he, Tison, attempted to intervene, but was knocked down by the defendant. Tison then fled from the house.
Defendant testified that he was standing at the door talking to the victim when Tison came up from inside the house. According to defendant, Tison ordered him to leave, but he refused to do so. Tison then went to the kitchen and returned with a knife. Tison attacked defendant with a knife, and the victim, attempting to intervene, was stabbed, presumably unintentionally, by Tison.
The son of the victim and defendant, Freddie Armstrong, Jr., was apparently an eyewitness. He was three and one-half years old at the time of the slaying and four and one-half years old at the time of the trial. On direct examination, Freddie, Jr. testified that he saw defendant take a knife from his pocket and stab his mother. On cross-examination, the child acknowledged witnessing a fight between defendant and Mark Tison, which the victim tried to break up.

ASSIGNMENT OF ERRORS 1 and 2
Defendant contends that the trial court erred in excluding, either for substantive or impeachment purposes, evidence of state witness Mark Tison's psychiatric commitment which occurred some eight months after the killing. Defendant maintains that this evidence would have shown that Tison had a propensity for violence and, consequently, would have bolstered the defense theory that it was not defendant, but Mark Tison, who had stabbed the victim. Medical records which defendant sought to introduce contained statements indicating that Tison had been involuntarily committed because he had threatened his father with a knife and verbally threatened other members of his family. These records indicated that Tison had a drug problem, was both homicidal and suicidal and that, at the time of his commitment, he displayed uncooperative, hostile behavior.
The relevancy of evidence is within the discretion of the trial judge and his ruling in this regard will not be disturbed absent a clear abuse of that discretion. State v. Chaney, 423 So.2d 1092 (La.1982).
The propriety of the court's action in excluding evidence concerning Tison's commitment raises two separate questions: Was the evidence relevant, and, if it was, did the probable prejudice resulting from its admission substantially outweigh its probative value. State v. Ludwig, 423 So.2d 1073 (La.1982).
In State v. Ludwig, supra, the defendant attempted to exonerate himself by implicating the victim's wife in the crime. To this end, he sought to introduce evidence that the victim's wife had shot the victim in his foot and leg some six months prior to the night of the murder. The trial court excluded this evidence, indicating *1259 that it thought that it was not relevant. The Supreme Court concluded that the trial court was in error in finding that the evidence was not relevant, but, nevertheless, held that the evidence was properly excluded since,
"... its slight probative value was substantially outweighed by the risk that its admission would consume too much time, unnecessarily confuse the jury concerning the issues to be determined, and tend to excite the emotions of the jury to the undue prejudice of the opponent. See State v. Moore, 278 So.2d 781 (La.1973)."
Both State v. Ludwig, supra, and the instant case exclude evidence which would have tended to lend credence to a defense theory that someone other than the defendant had committed the offense. As in Ludwig, although the excluded evidence in the instant case appears to have been relevant, its probative value was substantially outweighed by the probable prejudice. In the instant case, the excluded evidence was medical records from one of Tison's psychiatric hospitalizations. This particular hospitalization took place more than eight months after the alleged offense. These medical records contained, along with clinical observations and diagnoses, long recitations of hearsay concerning Tison's alleged threatening behavior toward his family. We find that the trial judge did not abuse his discretion in excluding the medical evidence since the probative value was substantially outweighed by the prejudice which its introduction would have engendered.
We note that even if it had been error to exclude the records, it would have been harmless. See State v. Humphrey, 412 So.2d 507 (La.1981), dissenting opinion by Dennis, J., 431 So.2d 751. Defendant hoped to use excluded evidence to show that Tison had a violent disposition and, therefore, was capable of having stabbed the victim. Although evidence concerning Tison's commitment subsequent to the killing was excluded, defendant was allowed to introduce evidence concerning three psychiatric hospitalizations of Tison which occurred prior to the killing. This evidence included the testimony of a nurse regarding Tison's violent behavior when he was hospitalized in July of 1982. The lack of the excluded evidence did not substantially hinder defendant's attempt to show that Tison had a violent disposition. We conclude that any error would have been harmless.

ASSIGNMENT OF ERROR NO. 3
Defendant contends that the trial court erred in allowing Freddie Armstrong, Jr. to testify. Defendant's contention is that the four-year-old witness did not have the requisite understanding to testify.
The trial court, in accordance with LSA-R.S. 15:469, undertook an examination of Freddie, Jr. in order to determine if the child had sufficient understanding to testify. The trial court questioned the child to test his understanding of the oath and the need to tell the truth. Counsel for the defense was given an opportunity to question Freddie, Jr. in this regard. The court determined that the child was competent to testify. The determination of the trial court as to whether or not a child has sufficient understanding to testify is entitled to great weight because it has the advantage of seeing and hearing the witness. State v. Edwards, 420 So.2d 663 (La.1982); State v. Humphrey, supra; State v. Thompson, 364 So.2d 908 (La. 1978); State v. Francis, 337 So.2d 487 (La. 1976). Although Freddie, Jr.'s answers were at times hesitant, this does not necessarily indicate incompetence. State v. Humphrey, supra. The determination of the trial judge that a child witness is competent is based, not only upon a child's answers to questions testing his understanding, but also on the child's overall demeanor on the witness stand. State v. Humphrey, supra; State v. Thompson, supra.
In State v. Arnaud, 412 So.2d 1013 (La.1982), the Louisiana Supreme Court upheld the lower court's decision that a four-year-old boy was competent to testify. In both that case and the instant case, there *1260 were shortcomings in the child's testimony. In both cases, the child testified to some facts that were crucial in the adjudication. Admittedly, the testimony in the present case was sketchy and could be classified as well-coached statements brought out by leading questions, but that fact alone does not dictate the exclusion of the child's testimony and is better dealt with through the traditional courtroom methods of cross-examination, proper instruction of the witness and the attorney, and proper objections by the opposing side. State v. Edwards, supra.
The trial court acted within its discretion in ruling that Freddie, Jr. was competent to testify. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 4
The defendant argues that the trial court erred in admitting into evidence the hearsay statement made by Freddie Armstrong, Jr. not more than one-half hour after the stabbing of his mother, stating that the defendant had struck the victim and she was bleeding. The trial judge ruled that the statement fell within the res gestae exception. LSA-R.S. 15:447 provides:
"Res gestae are events speaking for themselves under the immediate pressure of the occurrence, through the instructive, impulsive and spontaneous words and acts of the participants, and not the words of the participants when narrating the events. What forms any part of the res gestae is always admissible in evidence."
Defendant argues that the amount of time that passed between the incident and the statement was sufficient to restore the youth to normal reflective thought processes, thus abrogating the classification of the statement as part of the res gestae. The amount of time that elapses between the statement and the occurrence of the crime is not the sole consideration in determining whether a statement is part of the res gestae. The doctrine of res gestae includes not only spontaneous utterances and declarations made before and after the commission of the crime, but also testimony of witnesses and police officers pertaining to what they heard or observed before, during, or after the commission of the crime if the continuous chain of events is evident under the circumstances. LSA-R.S. 15:448; State v. Billiot, 421 So.2d 864 (La.1982).
In this instance, the statement clearly appears to be part of a continuous chain of events beginning with the criminal act. From the time of the killing, the child was confused, left unattended, and finally taken in by a neighbor. It is improbable that the young boy regained his composure such a short time after witnessing the stabbing of his mother. The child's statement to the neighbor was not a narrative of the events, but a statement made under the immediate pressure of the occurrence. LSA-R.S. 15:447. Accordingly, we find that the trial court acted correctly when it admitted into evidence the testimony of the neighbor concerning the child's statement. This assignment of error is without merit.

DECREE
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.