ARMSTRONG, Judge.
Defendant, James O’Banion, and his co-defendant, Peter Davis, were charged by two separate bills of information with the November 13, 1987 armed robberies of Douglas Daigle and Donald E. Sims, both violations of La.R.S. 14:64. Following trial by jury defendant was found guilty as charged on both informations.[1] The State subsequently charged defendant with being a habitual offender as to one of the convictions. Following a hearing defendant was adjudicated a second felony offender and sentenced to serve thirty-three (33) years at hard labor without the benefit of probation, parole, or suspension of sentence. On the second conviction defendant received an identical sentence which was ordered to run concurrently with the first. Defendant now appeals, raising two assignments of error.
FACTS
On November 13, 1987, at approximately 5:45 a.m., Douglas Daigle, a co-manager of the Wal-Mart store in Chalmette, was working in the manager’s office when a man wearing a stocking mask and carrying a gun entered the office. The robber ordered Mr. Daigle to open the door to the connecting office where the store’s safe was located. The robber then made him lie on the floor, taped his eyes, and tied him up with plastic straps. At that time, Don Sims, the other co-manager, entered the office, saw the robber, and attempted to flee, but was ordered to stop by the first robber and a second man, who was also armed. The robbers brought Mr. Sims back to the office, where they attempted to have him open the door which was self-locking, which he finally did. Mr. Sims was then forced to lie on the floor by one robber while the other went into the office where the safe was located. While the robbers were confronting Mr. Sims, Douglas Daigle was able to hear them talking and was later able to identify the defendant by his voice. Mr. Sims was later able to identify the other robber as Peter Davis. After the robbers had taken approximately $11,000 from the safe, they left the manager’s office. Don Sims was able to untie himself and called the police. While on the phone, Mr. Sims was able to see, through the security cameras, the robbers leaving the store and the direction in which they made their escape.
Various members of the Sheriff’s Department responded to the call from Mr. Sims, including Sargeant Hoffmeister, who testified that as he pulled into the parking lot adjacent to the Wal-Mart, he saw. two men running from the direction of the Wal-Mart toward K-Mart. One of the men, who was carrying a white bag, apparently fell, then looked straight at Sargeant Hoff-meister (who was in his vehicle) threw a pistol through the window of the car and resumed running. Sargeant Hoffmeister identified the defendant as the man who threw away the pistol.
A short time later, the defendant was found hiding in some weeds in a field approximately four blocks from the Wal-Mart. He was in possession of a white bag which contained over $11,000 in cash; a stocking mask was found in his pocket. About one hour later, Peter Davis was found hiding in a utility shed near the *558 Wal-Mart. A pistol and two sets of keys, which had been taken from the victims, were recovered from Peter Davis.
The defense presented no evidence at trial.
Our initial review of the record for errors patent reveals none.
ASSIGNMENT OF ERROR NUMBER 1
By his first assignment of error, the appellant argues that the trial court erred in allowing the State to present evidence of what transpired after the defendant and Peter Davis separated following the robbery. Included in this issue is the admission into evidence of the items seized from Peter Davis at the time of his arrest.
The instances where the testimony and evidence were admitted are scattered throughout the transcript. The first instance, and timely objection, occurred during the State’s opening statement when the prosecutor made reference to Mr. Davis having been caught and that items were found in his possession. In answer to the defense counsel’s objection, the State argued that it was all part of the res gestae. The court then overruled the objection. Defense counsel later reurged his objection and made it a continuing objection.
To be admissible, all evidence must be relevant. La.R.S. 15:435. La.R.S. 15:441 defines relevancy as follows:
“Relevant evidence is that tending to show the commission of the offense and the intent, or tending to negative the commission of the offense and the intent.
Facts necessary to be known to explain a relevant fact, or which support an inference raised by such fact, are admissible.”
As long as the evidence has a tendency to make a consequential fact more or less probable, the “logical” relevancy test is satisfied. State v. Davenport, 445 So.2d 1190 (La.1984); State v. Ludwig, 423 So.2d 1073 (La.1982). Therefore, relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. State v. Davenport, supra; State v. Ludwig, supra.
Clearly, the evidence regarding the actions of the defendant’s co-perpetrator is relevant to the matter at issue. Furthermore, the evidence regarding the items taken during the robbery, which were recovered from Peter Davis, is also relevant.
Even though evidence is relevant because it has probative value, other counterbalancing factors may exist which lead a court to exclude it. The factors to be considered are: the danger that the evidence may unduly arouse a jury’s emotions of prejudice, hostility or sympathy; the probability that the evidence may unduly distract the jury from the main issue; delay in the trial; the danger of unfair surprise. State v. Franklin, 353 So.2d 1315 (La.1977); State v. Davenport, supra; State v. Ludwig, supra.
In the instant case, it does not appear that the evidence of the arrest of Peter Davis would either confuse the jury or unduly prejudice the defendant. The jury was fully aware that there were two robbers and that both were armed. Also, both victims testified extensively about the fact that the robbers took their keys. The evidence regarding the arrest of Peter Davis and the seizure of the keys and a weapon from him simply corroborated the evidence that was being presented through the victims’ direct testimony.
It should be noted that the defense counsel argues extensively that the evidence regarding Peter Davis is not res gestae and therefore should not be admitted. However, this argument is spurious. The res gestae doctrine operates as an exception to allow in evidence which would otherwise be inadmissible, such as hearsay or other crimes evidence. The evidence to which defense counsel objected in this matter was neither hearsay nor other crimes. The evi-. dence was limited to the actions of the police officers who arrested Peter Davis and seized items from him.
We find no merit to this assignment of error.
*559 ASSIGNMENT OF ERROR NUMBER 2
Defendant-appellant’s second assignment is that the trial court erred when it denied a motion for mistrial after Donald Sims, one of the victims, indicated that Peter Davis had entered a plea of guilty. The statement was made in the following context:
“Q Do you recognize, have you ever seen that individual before?
“A No, not before that time.
“Q That person without the mask, was that Mr. O’Banion?
“A No sir.
“Q Was he a tall gentleman?
“A Yes, sir, he was. He was taller. It was the gentleman that had pleaded guilty earlier.
“MR. ESCUDIER:
I am going to object, Your Honor. At this time, I ask for a mistrial.
“MR. DIAZ:
We will argue it out of the presence of the jury.
(BENCH CONFERENCE.)
“THE COURT:
At this time, the Court will instruct the jury to disregard that last remark.
“MR. ESCUDIER:
To which ruling, I would respectfully object.”
La.C.Cr.P. art. 770(2) mandates the granting of a mistrial if a judge, district attorney, or a court official refers within the hearing of the jury to: 1) race, religion, color or national origin; 2) another crime committed or alleged to have been committed by the defendant; 3) the failure of the defendant to testify; or 4) the refusal of the judge to direct a verdict. In this case, neither the remark made nor the person who made it fall within the purview of Article 770.
La.C.Cr.P. art. 771 provides in part that when a remark or comment, which is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, is made by a witness or person other than the judge, district attorney or a court official, the court shall promptly admonish the jury to disregard the remark. On motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.[2] La.C.Cr.P. art. 775 provides that a mistrial shall be ordered upon motion of the defendant “when prejudicial conduct in or outside the courtroom makes it impossible for the defendant to obtain a fair trial, or when authorized by Article 770 or 771.”
In State v. Payne, 482 So.2d 178 (La.App. 4th Cir.1986) writ denied, 487 So.2d 436 (La.1986), this Court noted that a mistrial is a drastic remedy warranted only when an error at trial results in substantial prejudice to a defendant which effectively deprives him of a fair trial. The Louisiana Supreme Court has held that the determination of whether to grant a mistrial under Article 775 is within the trial court’s discretion, and its denial of a motion for mistrial should not be disturbed on appeal absent an abuse of this discretion. State v. Smith, 433 So.2d 688 (La.1983); State v. Alexander, 351 So.2d 505 (La.1977). The standard to judge whether a mistrial should have been granted is whether the defendant “suffers such substantial prejudice that he has been deprived of any reasonable expectation of a fair trial.” State *560 v. Smith, supra at 696; State v. Cushenberry, 407 So.2d 700 (La.1981).
The defense contends in its brief that the knowledge that Peter Davis had entered a plea of guilty was so prejudicial that it could not be disregarded by the jury, despite the court’s admonition to do so. This contention is based on the fact that the jury knew that Davis was a full participant in the crimes, and that therefore the knowledge that he had entered a guilty plea was especially harmful to the defendant.
The evidence against the defendant in this matter was overwhelming. He had been identified by Douglas Daigle and by a police officer who saw him running from the scene and at whom the defendant threw his weapon. He was arrested within minutes while in possession of the money stolen in the robbery. The jury’s knowledge that Peter Davis had admitted his complicity in the robbery would not have affected its decision to find the defendant guilty. The trial court’s decision not to grant a mistrial does not appear to be an abuse of discretion.
We find no merit to defendant’s second assignment of error.
For the foregoing reasons we affirm the convictions and sentences of the defendant.
AFFIRMED.

. The third district court case, number 116-500, was for a preliminary hearing only and was consolidated with 116-797 at the district court level.

. La.C.Cr.P. art. 771 provides:
"In the following cases, upon the request of the defendant or the state, the court shall promptly admonish the jury to disregard a remark or comment made during the trial, or in argument within the hearing of the jury, when the remark is irrelevant or immaterial and of such a nature that it might create prejudice against the defendant, or the state, in the mind of the jury:
"(1) When the remark or comment is made by the judge, the district attorney, or a court official, and the remark is not within the scope of Article 770: or
"(2) When the remark or comment is made by a witness or person other than the judge, district attorney, or court official, regardless of whether the remark or comment is within the scope of Article 770.
"In such cases, on motion of the defendant, the court may grant a mistrial if it is satisfied that an admonition is not sufficient to assure the defendant a fair trial.”