WILLIAMS, Judge.
Defendant, Reginald Magee, was indicted on March 2, 1988, along with Charles McPherson, Marlon Lawson and Larry Rudolph, for the first degree murder of Michael Howard. Defendant pled not guilty to the charge. On October 6, 1989, defendant’s charge was severed from the others. From October 18 through 21, 1989, he was tried by a jury of twelve. Thereafter, he was found guilty as charged. Following the sentencing phase of trial, the jury could not reach a verdict as to his sentence. The court then sentenced defendant, on November 6, 1989, to life imprisonment without benefit of probation, parole or suspension of sentence.
On appeal, defendant claims the following:
1. The trial court erred in denying his motion to suppress the evidence; and
2. The trial court erred in admitting into evidence gruesome photographs.
FACTUAL HISTORY
On the evening of March 2, 1988, Michael Howard visited the apartment of Ken Brown. Also visiting Brown was McPherson, who once worked with Brown. The three watched a basketball game on television.
Shortly after 8:00 P.M., someone knocked on the door. Brown looked through the door’s peephole and saw Marlon Lawson. He recognized Lawson as a friend of McPherson. Lawson was allowed to enter the apartment along with defendant and Larry Rudolph. Brown knew defendant as “Bam,” but did not know Rudolph. Lawson was carrying a garbage bag, while Rudolph carried a pistol and defendant carried a sawed-off shot gun.
McPherson closed the door behind Lawson, Rudolph and defendant. Brown and Howard were ordered to get down on the floor. McPherson asked, “Where’s it at?” Howard got down, but Brown only knelt on one knee before getting back up. Defendant shot Brown as he attempted to go through the sliding glass door to the patio. Defendant and Rudolph then shot Howard while McPherson and Lawson were in the kitchen. Howard fell through the sliding glass door, and Brown pulled himself over the balcony railing. He fell three stories. *607 Brown broke his arm in the fall and then went into a neighbor’s apartment.
Officer Christy Williams, an off-duty policewoman who lived in Brown’s apartment complex, heard the gunshots. Several residents directed her to Brown’s apartment. When Williams entered Brown’s apartment, she found Howard lying face down. He had multiple gunshot wounds. She also found cocaine, a scale and garbage bags on the counter in the kitchen. While she was in the apartment, Brown returned. Williams saw the large hole in his back. He walked around the apartment in a highly agitated state. She asked him if he knew any of his assailants, and he named McPherson. Brown also alerted her that his stereo equipment, a camera and a 9mm gun had been stolen.
Thereafter, Brown was taken to Methodist Hospital where he was interviewed by Detective Ross Mocklin. Brown told him that defendant, McPherson, Lawson and Rudolph were his assailants. An arrest warrant was then issued and, pursuant to that warrant, defendant was arrested at a house on the 3100 block of Toulouse Street. Detective Byron Adams, together with other officers, arrived at the house on Toulouse and were let inside. Adams observed defendant run to the back of the house. However, defendant returned to the front of the house where he was placed under arrest.
Adams found two 9mm Intertect semiautomatic guns and a .38 revolver on the living room floor. A .357 Magnum was on the couch near another occupant of the house. Two other occupants of the house lounged on a mattress on the living room floor. One of the 9mm guns was later identified by Brown as the one stolen from his apartment on the night of the murder.
At trial, defendant testified that on the night Howard was murdered, he was at home with his sister and girlfriend. He also testified that Laurie Clayton, whose child he fathered, was Brown’s former girlfriend. He claimed Brown threatened to get even with him for stealing Clayton from him. Clayton was murdered shortly before trial.
ERRORS PATENT
A review of the record reveals no errors patent.
ASSIGNMENTS OF ERROR
Defendant’s first assignment claims the trial court erred when it denied his motion in limine to suppress the introduction of the three guns seized from the residence where he was arrested.[1] Defendant claims the introduction of the guns was more prejudicial than probative, because it served no purpose other than to impeach his credibility with the jury by showing he is a “bad guy.”
Defendant asserts his motion in li-mine should have been granted as Adams, the arresting officer, admitted the four guns seized at the Toulouse Street residence were not taken from him and as he did not own or rent the residence where he was arrested. Defendant also reaffirms that the sawed-off shot gun, which he allegedly possessed at Brown’s apartment, was not found at the residence where he was arrested.
In response, the State asserts the three guns are admissible as relevant evidence because they were needed to connect defendant to the fourth gun seized from the house on Toulouse Street. The State contends that linking defendant to Brown’s gun was a critical element of its case against defendant. By linking the three guns to other occupants of the house, all of whom were not suspects in Howard’s murder, the State claims the fourth gun is linked to defendant. In turn, defendant is linked to the murder of Howard in Brown’s apartment as that gun was stolen from *608 Brown’s apartment on the night of Howard’s murder.
The State contends that at trial defendant attempted to dispel the connexity between himself and Brown’s gun. The State explains defendant concocted a theory that prior to the night of the murder, Brown’s apartment had been burglarized by one of the other occupants of the residence on Toulouse Street. During the burglary, Brown’s gun was taken, but Brown did not' discover it was missing until the night Howard was killed. Thus, the State asserts it was essential that it be allowed to present to the jury the location of defendant at the time of his arrest to Brown’s gun, and it was necessary to show the jury the exact number of guns in the room, their types and their positions vis-a-vis the room’s other occupants. If the State had been denied the introduction of this evidence, it claims the jury would have been left with a misap-preciation of there being one gun in a house with five occupants, diluting the connection of Brown’s gun to defendant.
As this case was tried after January 1, 1989, the effective date of the Code of Evidence, the admissibility of the State’s evidence is governed by LSA-C.E. arts. 401-403.
Art. 401. Definition of “relevant evidence”
“Relevant evidence” means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.
Art. 402. Relevant evidence generally admissible; irrelevant evidence inadmissible
All relevant evidence is admissible, except as otherwise provided by the Constitution of the United States, the Constitution of Louisiana, this Code of Evidence, or other legislation, evidence which is not relevant is not admissible.
Art. 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time
Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.
The official comments to the Code of Evidence indicate that although its definition of “relevant evidence” differs somewhat from that provided by former LSA-R.S. 15:441-442, i.e., relevant evidence is that tending to show or to negate the commission of the offense and the intent, the difference is largely stylistic. LSA-C.E. art. 401, comment b. The comments also indicate that the Code’s basic approach “to the admission or exclusion of evidence, mandates] that all relevant evidence is admissible, except as otherwise provided by positive law, including ... Article 403, which is of pivotal importance.” LSA-C.E. art. 402, comment b. To be admissible under the Code, evidence need not have any predetermined weight. LSA-C.E. art. 402, comment c.[2] Rather than broad rule-of-thumb judicial exclusionary rules, Articles 401-403 impliedly express a preference for ad hoc in-context evaluations. LSA-C.E. art. 402, comment b.
Applying these standards of relevancy and rules for exclusion to the instant case, we find the trial court did not abuse its discretion in denying defendant’s motion in limine. It was not clear error for the court to admit the evidence as relevant or to find the probative value of the other three guns was not substantially outweighed by the danger of the evidence unfairly prejudicing the jury against defendant.
Defendant’s first assignment is without merit.
Defendant’s second assignment complains the trial court erred by admitting into evidence photographs of the deceased which he considers gruesome, i.e., State’s exhibits S-2 through S-9 and S-27 through S-29. He asserts that when the photographs are coupled with the coroner’s graphic description of the body and the *609 autopsy report, they are highly prejudicial to his defense.[3] He claims the photographs distorted the jury’s focus from the main issue of the case which was whether the State proved beyond a reasonable doubt that he murdered Michael Howard.
In response, the State asserts the photographs it introduced into evidence were not so extreme or gruesome so as to unduly prejudice the jury. When the photographs were exhibited to the jury, the State attests that none of the jurors made remarks, gasped, exclaimed, became ill, cried or took any other action which would indicate a loss of mental poise or the loss of their ability to rationally decide this case.
The record reflects Dr. Gerald Liuzza, Assistant Coroner, testified as the State’s first witness. He performed Howard’s autopsy and testified concerning Howard’s multiple wounds and the cause of those wounds. He was shown Exhibits S-2 through S-9 which are photographs of Howard’s body and of his various bullet wounds. While describing what was depicted in S-2 and S-3, defendant objected, claiming the photographs spoke for themselves and the witness had not taken the photographs. The trial court overruled the objection. No other objections to the photographs were lodged until the close of the State’s case. At that time, defendant objected to exhibits S-2 through S-9 as repetitious and gruesome, asserting he did not want them shown to the jury. This objection was also overruled by the trial court.
As to the crime scene photographs designated as Exhibits S-27 through S-29, the photographs were introduced in globo as part of Exhibits S-17 through S-31. The photographs were taken by Officer Kevin Baker and no objection was raised in reference to them during Baker’s testimony. Defendant did not object to these photographs until the close of the State's case, when the photographs were actually introduced into evidence. Defendant’s objection urged S-27 through S-29 were a “rehash of the photograph already on the table.” The trial court overruled the objection.
Our examination of S-2 through S-9 and S-27 through S-29 does not find the photographs particularly gruesome. Viewing them would not have caused the jury to become overwhelmed or lead them to convict defendant without sufficient other evidence. The trial court did not abuse its discretion or commit clear error when it overruled defendant’s objections to the photographic evidence.
Defendant’s second assignment is, therefore, without merit.
For the reasons assigned, defendant’s conviction and sentence are affirmed.
AFFIRMED.

. A total of four guns were seized from the house on the 3100 block of Toulouse, i.e., two 9mm semi-automatics, a .357 Magnum and a .38 revolver. One of the semi-automatics belonged to one of the victims, Ken Brown. It was not revealed who owned the other three guns. Defendant’s argument implies the trial court erred in admitting into evidence the three guns not belonging to Brown.

. This approach accords with the approach of former LSA-R.S. 15:441-442. Id., with reference to State v. Ludwig, 423 So.2d 1073 (La.1982).

. Defendant claims he offered to stipulate to the contents of the photographs, but the State refused his offer. A review of the record, however, does not reveal such an offer. Nevertheless, even if such an offer were made, defendant cannot deprive the State of the moral force of its case by offering to stipulate to what is shown by the photographs. State v. Perry, 502 So.2d 543 (La.1986), cert. den., Perry v. Louisiana, 484 U.S. 872, 108 S.Ct. 205, 98 L.Ed.2d 156 (1987), reh'ng den., 484 U.S. 992, 108 S.Ct. 511, 98 L.Ed.2d 511 (1987).