595 So.2d 1135 (1992)
STATE of Louisiana
v.
James K. MOSBY.
No. 91-K-1433.
Supreme Court of Louisiana.
March 2, 1992.
*1136 Richard Phillip Ieyoub, Atty. Gen., Douglas Paul Moreau, Dist. Atty., Ettie Sue Bernie, Suzan Ponder, Asst. Dist. Attys., for plaintiff-respondent.
Kathryn Mary Flynn, Baton Rouge, for defendant-applicant.
CALOGERO, Chief Justice.
Defendant was charged with simple robbery of a patron inside the LNB bank near downtown Baton Rouge. During the trial defendant attempted to introduce evidence that two similar robberies which had occurred in other banks located in the same general area, within a three month time frame, were committed by one Michael Jackson, a black male near the same age as defendant, and not dissimilar in appearance. Defendant's objective, of course, was to persuade the jury that Michael Jackson, not the defendant, likely had committed the charged crime also. The trial judge excluded evidence of these other robberies, finding that the evidence, even if relevant, would tend to confuse the jury.
After conviction and sentence[1], the court of appeal found that the judge had committed error by excluding the evidencewhich it found relevant and admissiblebut went on to hold that the error was harmless beyond a reasonable doubt. State v. Mosby, 581 So.2d 1060 (La.App. 1st Cir.1991). We granted writs on defendant's application concerned that such error, if indeed it was error, probably was not harmless.
We now find it unnecessary to examine or address the issue of harmless error because we affirm the conviction for a different reason. There was no error in the district court's excluding the evidence. While the evidence was relevant, although not strongly persuasive, it was properly excluded nonetheless, because the probative value was substantially outweighed by the danger of confusion of the issues, misleading the jury and considerations of undue delay and waste of time, if not as well, undue prejudice to the state.
Mosby's ex-girlfriend, Johnson, tipped off the police about his involvement in the robbery. She stated that Mosby had told her that he, Mosby, had committed the robbery. On the stand, however, she changed her story. What actually happened, she testified, was that another person told her Mosby committed the robbery, and when she later confronted Mosby, he "laughingly" admitted that he had done it.
The evidence against defendant Mosby consisted primarily of an eyewitness identification by the victim, Guy McFarland. McFarland testified that as he entered the LNB on Florida Boulevard in Baton Rouge, he saw the man who later robbed him standing at the corner of the bank and made eye contact with him. Then, while McFarland was standing in line to make a deposit, Mosby came up and took a money bag from McFarland's hands. As Mosby ran from the bank he hit a glass door, which shattered, but continued to run out *1137 of the bank through another exit. McFarland chased the robber out of the bank and into the parking lot of an apartment complex where he entered an unoccupied "burgundy colored Nova" and made good his escape. McFarland identified Mosby as his assailant in a photo line-up, a physical line-up, and again at trial. Mosby's defense at trial was misidentification. Mosby's attorney attempted to introduce evidence that two similar robberies of bank patrons had been committed in the same area within a four month period by another individual, one Michael Jackson, who was not incarcerated at the time of the LNB robbery. Before trial the defendant filed a Motion to Produce Similar Offenses, in which he asked the court to allow him to show at trial that two similar robberies had occurred, on January 7 and on April 1 of 1987. The motion was heard prior to trial. Defense counsel noted the similarities between each of the two robberies and the one with which Mosby was charged: all of the robberies took place within blocks of one another, all were committed during the daytime, and the description of the robber was the same in each instancea black male, thin to medium build, 511' to 6'.
The state countered by showing the differences between the two other robberies and the present one. In the January 7 robbery at an LNB branch different from the one in which the "Mosby robbery" occurred, the robber knocked a bank patron to the floor and kicked him in his stomach and ribs until he released a bank bag.[2] That robber had earlier broken into song in a falsetto voice and danced around as he stood in line. The victim also indicated that the robber had a note written on a piece of paper which he was waving around. He was described as wearing a cap and having a goatee and a moustache.
The victim of the April 1 Hibernia Bank robbery testified that the robber was at one teller station completing a transaction and that he was at another. As the victim headed out the door, the robber, coming from behind, yelled and grabbed the money bag. The victim chased the robber away from the bank and saw him escape in a getaway car driven by another person. The victim testified that he did not notice any facial hair on the robber and did not notice whether the robber was wearing anything on his head.
The trial judge agreed that the robberies were similar in certain respects but that, contrary to the defense argument, and focusing on State v. Patch, 470 So.2d 585 (La.App. 1 Cir.1985), this evidence was not admissible. Patch was a case involving an obscenity charge in which evidence that "six months after the charged offense another man who resemble[d] the defendant exposed himself to another woman who live[d] in the same apartment complex" was deemed admissible. Id. at 587. In one respect for sure, Patch differed from the case under review, determined the trial judge. The defendant in Patch presented an alibi defense, something Mosby did not.[3] The judge supported his ruling in this case on the strength of this difference. Counsel for defendant acknowledged this difference in the cases, yet argued that State v. Vaughn, 431 So.2d 358 (La.1982) and State v. Jenkins, 134 La. 185, 63 So. 869 (1913), permit him to introduce this evidence because it establishes a reasonable hypothesis that a third person may have committed this crime.
While the judge denied the motion, he agreed to allow the evidence in later if an alibi should be presented, or if, after defense counsel presented his case, it appeared that this evidence would be "relevant". Defendant did not present an alibi and he did not convince the trial judge that the evidence of the other crimes allegedly committed by Jackson were sufficiently relevant.
*1138 Relevant evidence, according to the La. Code of Evidence, "means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence". LCE art. 401.[4] Determining that evidence is relevant is only one step in determining whether it is admissible.
Even relevant evidence may be excluded if its probative value is substantially outweighed by other legitimate considerations in the administration of justice. State v. Ludwig, 423 So.2d 1073 (La.1983). La.Code of Evidence article 403 states "[al]though relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time".
When it is the state attempting to introduce "other crimes" evidence, the concern is primarily that the jury will convict the defendant because of bad character. On the other hand, this court has stated that where a defendant's constitutional right to present a defense is concerned and the prejudice to the state is slight, the evidence should be admitted, State v. Vaughn, 431 So.2d 358 (La.1982)[5].
Defendant relies upon Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973) for his argument here that excluding the evidence of the "Jackson" robberies denied Mosby the opportunity to present a defense. A court is not required, however, to allow the defense to introduce evidence which, although relevant, has little probative value and might confuse the jury or cause unnecessary delay. State v. Ludwig, 423 So.2d 1073 (La. 1981).
In Ludwig we affirmed a trial judge's refusal to allow the defendant to present evidence that six months before the homicide in question, the decedent's wife had shot him in the leg or foot. Although this evidence was relevant,[6] it was properly excluded because "[t]he probative value of a possibly accidental shooting six months before the charged offense was substantially outweighed by the danger of unfair prejudice, confusion of the issues, misleading the jury, and undue delay or waste of time." 423 So.2d at 1079.
The circumstances in Chambers differ significantly from those in the present case and in Ludwig. In Chambers evidence highly relevant and critical to the defense theory was held to be unconstitutionally excluded. The proffered evidence included a witness who confessed to the very crime for which the defendant was being tried. Other witnesses would have corroborated some circumstances and testified that the the confession took place. The excluded evidence was critical to the defense because *1139 it "related to the crime for which the defendant was on trial and tended to completely exculpate him." Ludwig, 423 So.2d at 1079.
The circumstances giving rise to arguably relevant evidence of other crimes offered to exculpate a defendant cover a wide range of possibilities. On the end of the spectrum most favorable to a defendant, there is the case like Chambers where a third person who has committed similar crimes is shown fairly surely to have committed the charged crime. On the other end there are cases where, without evidence of involvement in the charged crime, another person is shown to have committed similar, although not distinctly similar crimes, in the same community during the same time frame. The evidence regarding a third person's possible involvement would be relevant in each case, for introduction of the extraneous crimes tends to prove the possibility of another's involvement and would tend to make it somewhat less probable, albeit in substantially differing degrees, that the defendant committed the charged crime.
Yet, it is evident that in the stronger hypothetical mentioned, the defendant's constitutional right to present a defense cries out for admission of the evidence, while in the weaker, it would be a waste of time, tend to confuse or mislead the jury, and unfairly prejudice the state to permit introduction of the evidence. Our case falls somewhere between these extreme situations.
Application of LCE art. 403 requires a weighing and balancing of the probative value of the evidence against the "legitimate considerations of judicial administration" enumerated in that article. In assessing the probative value of evidence a judge should consider factors such as whether there is some connection between the perpetrator of the extraneous crime(s) and the crime at issue and whether the other crimes are of a distinctly similar character, such as a "signature" crime.[7]
Ultimately, questions of relevancy and admissibility are discretion calls for the trial judge.[8] His determinations regarding relevancy and admissibility should not be overturned absent a clear abuse of discretion. State v. Vaughn, supra; State v. Bates, 397 So.2d 1331 (La.1981); State v. Stramiello, 392 So.2d 425 (La.1980); State v. Alford, 384 So.2d 761 (La.1980); C. Torcia, Wharton's Criminal Evidence § 134, at 575-77 (14th Ed.1985).
Now we turn to the defense proffer and the circumstances surrounding the robbery at issue and the "Jackson robberies" to determine whether the trial judge abused *1140 his discretion in excluding the evidence of the crimes committed by Michael Jackson. At the in limine hearing, the defense proffered testimony from the preliminary examination in the Jackson robberies of the victims and of other witnesses who identified Jackson as the perpetrator in those robberies. Also included in the proffer was the testimony of Detective Phares who investigated one of the Michael Jackson robberies and the present robbery. The proffered testimony was intended to highlight the similarities among the three robberies and to suggest that Jackson probably committed the charged crime as well.
The robberies do share some basic similarities. All occurred during the morning banking hours. The banks were in the same general area of the city. Of the two "Jackson robberies", one occurred at a Hibernia branch on Government street and the other, at an LNB branch on Government street. The "Mosby robbery" occurred at the Republic Towers LNB branch located on Florida street. Florida and Government run parallel to one another, separated by one other major street, North street. All the robberies were committed by slender black males. And the robberies occurred during a four month period: the first Jackson robbery occurred January 7, the "Mosby robbery" occurred on March 9, and the last Jackson robbery occurred on April 1.
Although the Mosby robbery and the Jackson robberies are similar, they do not bear the strikingly similar characteristics of "signature" crimes. Such bank patron robberies in an urban area are not unusual. Were it a common trait of the "Jackson" robberies and the "Mosby robbery" that the robber sang in a falsetto voice and danced before he attacked his victim or if all these robberies had in common the existence of a cohort who drove the getaway car, coupled with other distinct similarities, a different result may be required. In these instances the potential for unnecessarily wasting time and confusing the jury would likely not outweigh the probative value of the evidence that another may have committed the charged crime.
The robbery with which Mosby is charged did not couple any violence with the snatching of the money bag. Moreover, Mosby, not a third person, drove the getaway car himself.
Also detracting from the probative value of the evidence proffered by Mosby in this case is the fact that Jackson was included in a photographic line-up which McFarland viewed before he observed the line-up from which he picked Mosby. McFarland had not chosen Jackson from that line-up. Nor is this a case where evidence indicates that the victim did not have a chance to adequately view his attacker. McFarland made eye contact with Mosby before he went into the bank to make his deposit. After the attack, which occurred during the daytime, he chased Mosby out of the bank and down the street.
On the strength of this evidence we conclude that the trial judge properly excluded evidence of the Jackson robberies. Its probative value was substantially outweighed by the danger of confusing and misleading the jury, considerations of undue delay and waste of time, if not as well, undue prejudice to the state.
In sum, the trial judge did not err when he excluded evidence of the Michael Jackson robberies. The judgment of the court of appeal is affirmed, but for the reasons discussed in this opinion.

DECREE
Accordingly, we affirm defendant James K. Mosby's conviction and sentence.
AFFIRMED.
WATSON, J., joins the opinion but concurs to add that he has doubts about the logical relevance of the evidence in question.
LEMMON, J., concurs and assigns reasons.
NOTES
[1] Mosby was convicted of simple robbery under La.R.S. 15:529.1 and adjudicated an habitual offender. He was sentenced to the maximum term of 14 years at hard labor without benefit of parole, probation, suspension of sentence, or good time. The appellate court amended the sentence to allow for parole eligibility.
[2] The victim suffered a ruptured eardrum, a cochlear concussion, and bruised ribs as a result of the attack.
[3] Patch also differs from the present case in other respects. The victim in Patch "viewed the offender for a very short period of time". 470 So.2d at 588. The corridor where she viewed the offender was not "well lit" according to the testimony of the arresting officers.
[4] Federal Rule of Evidence 401 defines relevant evidence exactly the same way. See State v. Ludwig, 423 So.2d 1073, 1078 (La.1983), where this court stated that "the sum and substance of our statutory relevancy rules, is essentially identical in concept to FRE 401". Ludwig was decided in 1983, before adoption of the Louisiana Code of Evidence.
[5] In State v. Vaughn, 431 So.2d 358 (La.1982), the defendants, two black males, were accused of raping a white woman. Defense counsel contended that the alleged victim consented to the encounter and buttressed this contention by showing that the victim's sister was married to a black man whom the alleged victim was quite fond of. This fact was used to show that it was not so improbable that a white woman would consent to sex with a black man. The alleged victim testified that her brother-in-law was not black. Defense counsel sought to impeach her testimony with the sister and brother-in-law's marriage license showing that he was, in fact, a black man. The trial judge excluded this evidence. Originally this court held that the evidence was properly excluded and noted the broad discretion of the trial judge in determining the relevancy and admissibility of evidence. On rehearing, Justice Lemmon acknowledged that the trial judge's discretion regarding questions of the admissibility of evidence but stated that when "prejudice to the prosecution is balanced against defendant's constitutional right to present relevant evidence in support of his defense, balance should be weighed in favor of admissibility in those cases in which the prejudice is minimal." Id. at 370.
[6] The evidence suggested the possibility of the wife's having killed the husband-victim by gunfire, which made it a little less probable that it was defendant who killed the victim, than would have been the case without the evidence.
[7] The seminal decision in Louisiana regarding the admissibility of evidence that another committed the crime for which a defendant is charged. State v. Jenkins, 134 La. 185, 63 So. 869 (1913), "stated a broad rule which allows evidence incriminating a third person when such evidence would establish a reasonable hypothesis of that person's guilt or a reasonable doubt of the guilt of the defendant". State v. Ludwig 423 So.2d at 1079. Jenkins involved a prosecution for murder where the state's case was based upon circumstantial evidence. Physical evidence showed that the victim had been shot by more than one person and the state's witnesses testified that they saw three men in the vicinity of the victim's house. The trial judge improperly excluded testimony from four defense witnesses that the defendants were miles away from the murder scene, as well as testimony showing that three other men inquired about the victim's whereabouts, made threats, and fled the jurisdiction. Thus, the court reasoned that if it was competent for the state to establish the defendant's guilt by circumstantial evidence, it was competent for the defense to suggest and offer to prove facts from which the jury might reasonably infer that another person was more likely to have committed the crime.
[8] Although the trial judge has the discretion to determine questions of relevancy and admissibility, in some areas in some instances there is a "rule" of absolute exclusion. "Examples are the character rule in a criminal case excluding evidence of the accused's bad character as a part of the prosecution's case in chief (judicial policy against undue prejudice); the rule excluding evidence of specific acts or instances of conduct for the purpose of proving character (judicial policy against undue prejudice and unfair surprise); the rule in a criminal case that prohibits evidence of other crimes if, but only if, the only logical series of inferences from the offered evidence is that the accused has a criminal disposition and therefore he probably committed the offense now charged (judicial policy against undue prejudice) ...". H. Trautman, Logical or Legal RelevancyA Conflict in Theory, 5 Vanderbilt Law Review 385 (1952).